THOMAS L. HOLLAND,

*vs.*

NATIONAL AUTOMOTIVE FIBRES, INC.

*New Castle, July* 13, 1937.

*Christopher L. Ward, Jr.*, of the firm of Marvel, Morford, Ward & Logan, for complainant.

*James H. Hughes, Jr.*, of the firm of Ward & Gray, for defendant.

THE CHANCELLOR: The defendant was incorporated on January 23, 1928. Its authorized capital consisted of ten thousand shares (each of the par value of one hundred dollars) of seven per cent. cumulative preferred stock, and four hundred and fifty thousand shares of common stock without nominal or par value. The preferred stock was convertible into common stock at the rate of six shares of common for one of preferred.

On March 15, 1930, there were outstanding 7,154 shares of preferred and 217,086 shares of common. On that date the certificate of incorporation was amended so as to provide for a re-classification of the company's stock. By the amendment, a seven per cent. cumulative preferred stock was authorized in the amount of 7,154 shares, a Class "A" no par common stock, issuable in series, in the amount of 450,000 shares and a Class "B" no par common stock in the amount of 200,000 shares.

The Class "A" common stock was entitled, after the charges in favor of the preferred stock were met, to an annual dividend of two dollars and no more payable quarterly, before the Class "B" common received anything. The Class "A" common dividend was cumulative.

After the amendment the old preferred stock remained exactly as it was, except that the stock into which it was convertible on the basis of six for one, was a Class "A" two dollar cumulative common stock, Series 1, instead of an ordinary common stock as before.

The old common was changed into the new Class "A" two dollar cumulative common stock, Series 1, on a share for share basis.

The amendment required that enough Class "A" two dollar cumulative common stock, Series 1 (42,924 shares), be set aside and reserved to be available at all times for the conversion rights of the preferred stock.

No dividends were paid on the Class "A" common stock Series 1 prior to August 1, 1935.

From June 21, 1935, to October 2, 1935, the holders of 5034 shares of preferred stock converted the same into 30,204 shares of Class "A" common stock, Series 1.

Thereafter, viz., on August 1, 1935, the defendant inaugurated dividends on its Class "A" common stock, Series 1, paying thirty-seven and one-half cents on that date, thirty-seven and one-half cents on November 1, 1935, and a like amount on the first days of February, May, August and November, 1936. On December 24, 1936, a further dividend of one dollar and fifty cents per share was paid on the Class "A" common stock, Series 1.

The complaint which the bill makes is that the defendant insists on recognizing the Class A common stock, Series 1, which was issued from June 21, 1935, to October 2, 1935, in conversion of the old preferred stock, as entitled to receive dividends on account of arrearages which had accumulated on the Class "A" Series 1 since its authorization on March 15, 1930.

The precise question is this—when does the accumulation of arrearages on the Class "A" common stock Series 1, issued in 1935, commence—from January 1, 1930, when the stock was authorized or from the dates respectively of its issue?

If it were not for the peculiar language of the charter amendment of March 15, 1930, the question which the case puts would be subject to an abrupt answer.

The language of the amendment which gives rise to the question is embodied in a rather lengthy description of the classes, rights, etc., of the several stocks which it authorized. It would serve no useful purpose to quote the entire amendment. It is sufficient to quote only the portion

pertinent to the pending question. The language is as follows:

"Such dividends upon the shares of Series 1 of the Class A common stock shall be cumulative from and after the 1st day of January, 1930, and such dividends upon the shares of any other series of said Class A common stock shall be cumulative from the date specified in that behalf in the resolution or resolutions of the board of directors creating and/or authorizing to be issued the shares of any such other series, respectively, and as shall be specified on the certificates evidencing the shares of any such other series, respectively. Such dividends upon the Class A common stock shall be cumulative from the date of issue thereof so that if any dividends for any past dividend period at the rate of two dollars ($2.) per share per annum shall not have been paid thereon or declared and a sum sufficient for the payment thereof set apart, the deficiency shall be fully paid or set apart, but without interest, before any dividend shall be paid upon or set apart for the Class B common stock."

The amendment contains decided conflict in the language that describes the period from which accumulations commence. The complainant contends for the date of the issue and the defendant for January 1, 1930, as the date from which accumulations commence. The rival contentions are of particular importance in relation to the 30,204 shares into which the old 5,034 shares of preferred stock were converted. This preferred stock had presumably been paid its annual dividend of seven dollars per share down to its conversion date in 1935. By then, two dollars per share per year had accumulated on the Class "A" common stock Series 1 for a period of five years. If that accumulation had piled up on Class "A" common stock Series 1 which had never been issued, it meant that when the preferred stockholders converted in 1935 they would receive for each share of seven dollar preferred stock theretofore held six shares of Class "A" common stock having accumulations thereon of ten dollars per share. The bonus to them after enjoying a seven dollar yield per share of preferred for five years, would amount to the rather tidy sum of sixty dollars for each share of preferred that was converted.

That would be the result under the facts as time developed them after March 15, 1930. As of that date, however, when the strangely conflicting language was adopted, the result so far as foresight could cast it might have been even more startling to contemplate. Suppose the business of the corporation was such that no dividends on Class "A" common Series 1 could be paid until ten years after March 15, 1930, instead of after a little over five as was the case—what would be the result, if the defendant's contention be accepted? It would be this, that the preferred after receiving its regular seven dollar rate throughout the period, could then convert and receive a right to accumulations at the rate of one hundred and twenty dollars per share of old preferred, a sum of fifteen dollars in excess of its redemption value.

It is hard to believe that rights so extraordinarily generous to the preferred and by the same token so extraordinarily burdensome to the remaining stockholders, were intended to be conferred.

The provision in the amendment that dividends should cumulate from and after January 1, 1930, should, if possible, be reconciled with the provision that such dividends should accumulate from the date of issue. To reconcile them is not an easy thing to do, for there is nothing very definite to lay hold of as the reconciling solvent. The complainant advances the theory that the date of January 1, 1930, must have been intended to be applicable only to the Class "A" common that issued during the first quarter after the amendment's adoption. That of course would cover all the Class "A" common that went instantly to the old common stock and such of the old preferred as might be converted before the quarter expired. The defendant on the other hand contends that the date of January 1, 1930, was intended to be applicable to all of the Class "A" common, of the Series 1, regardless of when it was actually issued, and that the phrase—"shall be cumulative from the date of

issue thereof"—was intended to be applicable only to those series of shares of Class A common that might be issued, which followed after the first.

These are the respective methods of reconciliation which the solicitors for the respective parties suggest. As between the two, the one suggested by the defendant is the less acceptable, for it leads to the extraordinarily unreasonable result hereinbefore mentioned. Its acceptance means furthermore that the incongruous idea must be adopted that stock may be conceived of as being entitled to dividends before the corporation has ever caused it to be issued. That conception, except to a very limited extent, is entirely at variance with any preconceived notions with which I am familiar. The limited extent to which I refer is this—that occasionally, perhaps for purposes of practical convenience in launching a new issue of cumulative preferred stock, or in order to adjust what I may call a fractional equity lingering from the past, a short ante-dating of the right to accumulation is provided for. In the instant case, the former, viz., practical convenience, is the only thing which appears as a reason for ante-dating the accumulations to January 1, 1930.

As preferences attaching to stock are the exception (*Gaskill v. Gladys Belle Oil Co.,* 16 *Del. Ch.* 289, 146 *A.* 337; *Penington v. Commonwealth Hotel Construction Co.,* 17 *Del. Ch.* 394, 155 *A.* 514, 75 *A. L. R.* 1136; *Id.,* 17 *Del. Ch.* 188, 151 *A.* 228), nothing should be presumed in their favor. They ought to be clearly expressed, if not by words of explicit import, at least by necessary implication. In ascertaining the meaning of the charter in the matter of the respective rights and privileges of classes of stock, the entire instrument is to be considered and its language construed as a whole. In this respect the rule of interpretation is no different from that which appertains to written contracts generally.

Looking at the pertinent language in its entirety we find the positiveness of the first expression, "from and after January 1, 1930," contradicted by the equal positiveness of the later expression, "from the date of issue thereof." The same sort of conflict inheres in the possibilities that may occur if the directors decide to issue Class "A" common stock of a later series. The language applicable in that eventuality provides that the stock of such later series shall be cumulative from the date specified in that behalf in the resolution of authorization which shall be specified in the certificates evidencing the new stock. Then follows the provision that all Class "A" common shall be cumulative from the date of the issue thereof. Suppose the directors in authorizing a new series should fix an unreasonably distant antecedent date for the cumulations to commence, which date, would prevail, the distant one or the one when the shares were issued?

Thus, the charter in the clause relating to a new series, if not contradictory, is equally as ambiguous as it is in the one relating to the first series.

Judge Sanborn in *A. Leschen & Sons Rope Co. v. Mayflower G. M. & R. Co.*, (*C. C. A.*) 173 *F*. 855, 857, 35 *L. R. A.* (*N. S.*) 1, expressed a rule for guidance in interpretation of contracts which is peculiarly appropriate for application in the instant case. It is as follows:

"Where the language of an agreement is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that the contract is fairly susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes it a rational and probable agreement must be preferred to that which makes it an unusual, unfair, or improbable contract."

Considering that nothing is to be presumed in favor of preferences, that the charter contract is highly ambiguous, and that the construction contended for by the defendant

is not such as comports with custom, prudence or fairness, but on the other hand rather contains elements of inequity and unusual singularity which render it improbable and to a large extent irrational, I am of the opinion that the defendant's construction should not be adopted.

The interpretation advanced by the complainant appeals to me as the more reasonable, and I accept it.

The defendant urges that if its interpretation be not accepted, then the two clauses are totally repugnant, and if so, the rule should be applied of accepting the first expression as controlling and rejecting the last completely. I shall not pause to examine the correctness or the scope and limitations of that rule as it has been applied by the courts. A rule that permits the relative location of conflicting clauses in an instrument to play a controlling part in the instrument's interpretation, is a rule born, it seems to me, of mental desperation, when it is remembered that the instrument is to be considered in its entirety. Why should the first position be considered as more important than the second? Why not give to the second the dominant voice, especially when it is the last expressed word on the subject? The later expression has on occasions been accorded superiority in the construction of wills. *Heney v. Manion,* 14 *Del. Ch.* 167, 168, 123 *A.* 183, 184. Should it become inferior in the case of contracts?

The rule which gathers intent from the mere position of a clause in an instrument in relation to the position of a repugnant clause, as was said by this court in the *Heney case,* is an arbitrary rule and is adopted only as a last resort. It has no more assurance of arriving at truth than would the flip of a coin. It has only one merit that entitles it to commendation and that is, whether the first or the second expression be accorded the position of dominance, it at least settles the controversy.

Before recourse is had to such an arbitrary rule, courts

should strive to make some sort of reconciliation between the apparently repugnant provisions. Though the reconciliation may not be entirely satisfying, yet if it accords with what is reasonable and fair and is consonant with the probabilities of human behavior, it is far better to accept it than to leave important rights to the arbitrament of the accidental position in the instrument of rival clauses. The former has some show of reason to support it; the latter contains much of the haphazard of chance.

If it is right that the preferences which are claimed for a stock should be clearly expressed, as I think they should, then it would seem reasonable to say that if those preferences are stated in terms that are irreconcilable in their repugnancy, a case arises where the clearness necessary for the definition of preferences has not been satisfied. The effect of repugnancy in such a case should not be the forcing of a choice between irreconcilables. Ought it not, rather, to be the furnishing of a reason for saying that the claimed preference has not been demonstrated with sufficient clearness? If it has not, it does not exist.

In the instant case, even if the reconciliation I have before indicated as preferable, be faulty, and the case be one of irreconcilably repugnant provisions and therefore one of insufficient clearness in the expression of the claimed preference, yet the result must be the same—viz., the dividends are not cumulative to the extent claimed by the defendant.

The defendant sets up in its answer the defense of laches on the part of the complainant. The defense is not sustainable. So long as the current dividends on the Class "A" stock did not exceed the annual rate of two dollars, the complainant had no occasion to file a bill relating to the propriety of paying cumulated arrearages. Evidently he knew as early as March 19, 1936, of the possiblity that a controversy might develop in the future over whether or

not cumulations on the Class "A" common issued in 1935 in conversion of the old preferred stock would commence from as far back as January 1, 1930, because, through his attorney, he addressed a letter on that date to the attorney for the defendant stating his client's view to be that the defendant would violate the charter if it treated the cumulations on the converted stock as reaching back to January 1, 1930; and the attorney for the defendant replied thereto to the effect that the complainant was wrong in his view.

The company did nothing in the way of dividend declarations which conflicted with the complainant's interpretation of the charter provision, until December 2, 1936, when a dividend of one dollar and fifty cents per share was declared on all of the then outstanding Class "A" common stock, including those shares which had been issued in conversion. This action precipitated the theretofore theoretical question into the realm of reality, because until then all the declared dividends were within the current yearly rate. Within seventeen days after the declaration of the questionable dividend, part of which was on account of accumulations piled up prior to some at least of the conversions, and five days before the dividend was payable, the complainant filed his bill. It seems evident that the complainant acted with diligence and was in no way guilty of laches.

Decree for the complainant.