CHARLES H. ELLINGWOOD,

Complainant Below, Appellant,

*vs.*

WOLF'S HEAD OIL REFINING COMPANY, INCORPORATED, a corporation of the State of Delaware, EUGENE W. CHASE, ARTHUR W. SCOTT, FREDERICK FAIR, EDWARD G. GNADE, BAYARD H. WATERBURY, EVERETT E. BELLEN, JOHN T. CARPENTER, J. ROLAND STEVENSON, PAUL M. GRIMM and GEORGE M. MCINTOSH,

Defendants Below, Appellees.

*Supreme Court, On Appeal, April 26, 1944.*

LAYTON, C. J., and TERRY, J., dissenting.

LAYTON, C. J., RICHARDS, RODNEY, SPEAKMAN, and TERRY, JJ. sitting.

*William S. Potter,* of the firm of Southerland, Berl & Potter, and *John T. Carpenter,* of the firm of Carpenter & Stevenson, of New York City, for appellants.

*William Prickett,* and *John G. Buchanan* and *Milton W. Lamproplos,* of the firm of Smith, Buchanan & Ingersoll, of Pittsburgh, Pa., and *Harold T. Parker,* of Oil City, Pa., for corporation and for appellees Eugene W. Chase, Arthur W. Scott, Frederick Fair, Edward R. Gnade, Bayard H. Waterbury and Everett E. Bellen.

*David F. Anderson,* of the office of Southerland, Berl & Potter, for appellees John T. Carpenter, J. Roland Stevenson, Paul M. Grimm and George M. McIntosh.

RICHARDS, Judge, delivering opinion of majority of the court:

There is no dispute between the parties interested in this proceeding, that when the preferred stockholders and the common stockholders met at the annual meeting held on May 3, 1943, the corporation was in default in respect to the declaration and payment of dividends in the amount of two years' dividends on the preferred stock. All of said arrearages of dividends had accrued prior to 1942, and during said year 1942 the corporation declared and paid a full six per cent dividend on the preferred stock.

This being the situation the court is called upon to determine the voting rights of the two classes of stock under the pertinent charter provisions.

It is well recognized that a certificate of incorporation may contain any provision with respect to the stock to be issued by the corporation, and the voting rights to be exercised by said stock, that is agreed upon by the stockholders, provided that the provision agreed to is not against public policy. *Thompson on Corporations, (3d Ed.) Sec. 989.*

The courts of this State have held that the rights of stockholders are contract rights and that it is necessary to look to the certificate of incorporation to ascertain what those rights are. *Gaskill v. Gladys Belle Oil Co., 16 Del. Ch.*

289, 298, 146 *A.* 337; *Penington v. Commonwealth Hotel Const. Corp.*, 17 *Del. Ch.* 188, 151 *A.* 228; *Id.*, 17 *Del. Ch.* 394, 155 *A.* 514, 75 *A.L.R.* 1136.

Nothing is to be presumed in favor of preferences attached to stock, and when a corporate charter attempts to confer preferences upon any class of stock provided for by it the same should be expressed in clear language. In interpreting the meaning of charter provisions the same method is applied as that which is followed in interpreting written contracts generally. The instrument should be considered in its entirety, and all of the language reviewed together in order to determine the meaning intended to be given to any portion of it. *Holland v. National Automotive Fibres, Inc.*, 22 *Del. Ch.* 99, 194 *A.* 124; *Gaskill v. Gladys Belle Oil Co., supra; Penington v. Commonwealth Hotel Construction Co., supra.*

The charter of Wolf's Head Oil Refining Company, Incorporated, evidences an intention on the part of the incorporators to make provision for the protection of the preferred stockholders.

It is specified in Article IV of the charter, that in case of "liquidation, dissolution or winding up of the affairs of the corporation," said preferred stockholders shall be entitled to full payment of the par value of their shares and all unpaid dividends accrued thereon, before any of the assets shall be distributed to the common stockholders. This same article gives to the board of directors the optional right to redeem the preferred stock in whole or in part, at any time before January first, 1940, but requires said board of directors to give sixty days' notice to all record holders of said preferred stock; and in addition thereto to pay in cash to each holder of preferred stock to be redeemed one hundred and ten per cent of the par value thereof.

Now we come to Article V of the charter which guarantees to the holders of the preferred stock "cumulative dividends thereon at the rate of six per cent for each and every

fiscal year of the company." This same article gives to the holders of the common stock exclusive "voting power for the election of directors, and for all other purposes." This is followed by the provision that the preferred stockholders shall have no voting power. Then comes the proviso,

"* * * that if at any time the corporation shall be in default in respect to the declaration and payment of dividends in the amount of two years dividends on the preferred stock, then the holders of a majority of the preferred shall have an election to exercise the sole right to vote for the election of directors and for all other purposes, to the exclusion of any such right on the part of the holders of the common stock until the corporation shall have declared and paid for a period of a full year a 6% dividend on the preferred stock, when the right to vote for the election of directors, and for all other purposes, shall revert to the holders of the common stock."

We desire to emphasize the fact that the wording of the above-quoted article is, "if at any time the corporation shall be in default in respect to the declaration and payment of dividends in the amount of two years' dividends on the preferred stock."

The appellant contends that the subsequent wording of the article, "until the corporation shall have declared and paid for a period of a full year a 6% dividend on the preferred stock," restricts the above-quoted language of the article with respect to the duration of the time when the preferred stockholders have the right to elect to exercise the sole right to vote for the election of directors and for all other purposes. If this be true, it likewise takes from the preferred stockholders a portion of the protection which we have pointed out was conferred upon them by the charter.

The appellant takes the position that after the preferred stockholders have elected to exercise the sole right to vote for the election of directors and for all other purposes, and have actually exercised said right to vote in pursuance of the election to do so, the payment of a six per cent dividend for the period of a full year causes said sole right to vote by the preferred stockholders, to revert to the common stockholders until the corporation shall again default in respect to the declaration and payment of dividends in the amount of

two years' dividends on the preferred stock. This ignores the rights of the preferred stockholders if the corporation is still in default in the payment of dividends on said preferred stock in the amount of two years' dividends. This also loses sight of the fact that the plain words of the charter are, "if at any time the corporation shall be in default"; and the further plain provision that "the said right of the preferred stock and its holders to exercise an election to vote shall survive any exercise of such election and a subsequent reversion of the right to vote to the common stock and its holders, and shall be a continuing privilege and right of said preferred stockholders." We agree that when a six per cent dividend for a period of a full year is paid on the preferred stock, the sole right to vote for directors and for all other purposes reverts to the common stockholders, notwithstanding the fact that dividends in the amount of two years are due on the preferred stock. If the preferred stockholders failed to again elect to exercise the sole right to vote, by giving notice to the corporation of their decision to exercise such right, as the charter requires them to do, the common stockholders would be entitled to exercise the right to vote for the election of directors and for all other purposes. But if the corporation is still in default in the declaration and payment of dividends in the amount of two years' dividends on the preferred stock, when a six per cent dividend is paid on preferred stock for the period of a full year, said preferred stockholders can still avail themselves of the right to vote for the election of directors and for all other purposes, if they comply with the conditions of the charter by giving notice to the corporation of their decision to exercise such right to vote.

The language used in the charter describing the conditions under which the preferred stockholders obtain the right to vote has nothing to say about the time when the arrearage in dividends on said stock shall have accrued. If the position is taken that the arrearage in dividends must have accrued after the right to vote had reverted to the common

stock, the preferred stockholders would be deprived of the right to vote for the election of directors no matter how great the arrearage in dividends might be, until additonal dividends in the amount of two years' dividends should accrue. This construction would take from the preferred stockholders the benefit which we think the charter intended to confer upon them.

It is not denied that when a majority of the preferred stockholders first elected to exercise their right to vote for the election of directors and for all other purposes in 1936, the dividends accrued and unpaid on the preferred stock amounted to $22\frac{1}{2}\%$, of that said accrued and unpaid dividends was more than two years' dividends.

Neither is it denied that from 1936 to May 3, 1943, additional dividends accrued on the preferred stock amounting to $40\frac{1}{2}\%$, and that the dividends paid on said stock during that period amounted to $25\frac{1}{2}\%$.

Therefore it clearly appears that when the annual meeting of the corporation was held on May 3, 1943, dividends amounting to $37\frac{1}{2}\%$ were accrued and unpaid on the preferred stock. Thus it appears that the corporation was in default in respect to the declaration and payment of dividends in the amount of two years' dividends.

In view of this situation we are of the opinion that the preferred stockholders were entitled to vote for the election of directors and for all other purposes, at the annual meeting of the corporation held on May 3, 1943, and that the persons whose names appeared on the ticket nominated and voted for by them are the legally elected directors of the corporation.

The decree of the Chancellor is affirmed.

LAYTON, Chief Justice (dissenting) :

I regret to find myself unable to agree to the conclusion reached by a majority of the court. With deference, it seems

to me that the majority have gone out of the way to make complex that which is simple.

The primary object in the interpretation of any written instrument is to ascertain the intention of the parties from the language which they have chosen by use; and where the language is clear and conveys a definite meaning, courts are forbidden to cast about for some other possible meaning and to give effect to that which they think the parties intended to say, or would have wished to say, but did not say. The language which the parties have deliberately used to express their intention cannot be ignored to avoid hardship or to meet special circumstances against which the parties have not protected themselves, so that the court, under the guise of construction, can make a better contract for the parties than they themselves have made.

Voting power attached to corporate stock is very generally lodged in the common shares; and here the dominant purpose of Article V of the charter is to vest the voting power in the common shares exclusively except in certain circumstances and then for a carefully limited time. The circumstances which gives rise to the shift of voting power from the common to the preferred shares is a default in the payment of dividends in the amount of two years' dividends. But this shift is not automatic. The preferred shares may, or may not, elect to exercise the right conferred on them. If they exercise the right, the voting power shifts to the preferred shares, and remains with them until for the period of a full year the stated dividend has been paid on the preferred shares. Upon this happening, the voting power reverts involuntarily to the common shares.

If, for their own reasons, the holders of the preferred shares do not choose to exercise the right, which comes into being when dividends in the amount of two years have not been paid on their shares, the default is enlarged, but it is a single thing. The default, whether it be for the minimum time, or for a longer time, goes hand in hand with the right

of election. The default, an integration, cannot be split up into several defaults, and thereby confer upon the holders of the preferred shares several rights of election growing out of the same default.

The use of the words "continuing privilege and right" in the last sentence of the paragraph, was very clearly meant as saving the exhaustion of the right of election as against one exercise of it, and permitting a shifting and reshifting of the voting power as conditions of default and the ending of them may successively occur.

If the parties had intended to say that the holders of the preferred shares were empowered to exercise the right of election at any time when dividends on the preference shares were in default for two years, it would have been easy to express that intent in simple language. What the parties did say was that if at any time dividends on the preference stock to the amount of two years' dividends should be in arrears, upon the exercise of the right of election, the voting power attached to the preferred shares until a full year's dividend had been paid on the preferred shares. The conception that while the life of the voting power lodged in the preferred shares by a default may have come to an end by the payment of a full year's dividend, yet the right of election growing out of the same default survives, is, I think, not to be found in the language the parties have used.

TERRY, Judge (dissenting).

The question presented is narrow. It is one of interpretation, and relates to the following language as employed under Article V of the corporate charter:

"V. Except as otherwise required by the statutes of the State of Delaware, or as herein otherwise provided, the holders of the common stock shall exclusively possess voting power for the election of directors, and for all other purposes, and the holders of the preferred stock shall have no voting power; provided, however, that if at any time the corporation shall be in default in respect to the declaration and payment of dividends in the amount of two years' dividends on the

preferred stock, then the holders of a majority of the preferred stock shall have an election to exercise the sole right to vote for the election of directors and for all other purposes, to the exclusion of any such right on the part of the holders of the common stock until the corporation shall have declared and paid for a period of a full year a 6% dividend on the preferred stock, when the right to vote for the election of directors, and for all other purposes, shall revert to the holders of the common stock. The election on the part of the holders of the preferred stock shall be consummated and effectuated by a notice to the corporation of their decision to exercise such right by holders of a majority of the preferred stock. During the time within which the holders of the preferred stock are exercising under this election the right to vote upon their stock, the holders of the common stock shall have no right to vote upon their stock. The said right of the preferred stock and its holders to exercise an election to vote shall survive any exercise of such election and a subsequent reversion of the right to vote to the common stock and its holders, and shall be a continuing privilege and right of said preferred stock; and the subsequent right to a reversion of the voting power to the common stock in the event of the payment of a full year's 6% dividend shall be a continuing privilege and right of said common stock and its holders."

From the date of its organization in 1929 until May 4, 1936, the directors of the corporation were elected by the holders of a majority of the common stock. Prior to the stockholders' meeting held on May 4, 1936, the holders of a majority of the preferred stock gave notice to the corporation, since there existed a default in the declaration and payment of dividends of 6% on the preferred stock in an amount of two years' dividends, that they, the preferred stockholders, elected to exercise their sole right to vote for the election of directors for the ensuing year at the 1936 stockholders' meeting.

During the years 1936, 37, 38, 39, 40 and 41 various amounts of dividends were declared and paid on the preferred stock, and various dividends were passed. It was not until the year 1942 that four dividends aggregating 6% were declared and paid on the preferred stock. The sole right of the preferred stockholders to elect the directors was not challenged by the holders of the common stock from May, 1936, through 1942. It was during the stockholders' meeting on

May 4, 1943, that the holders of a majority of the common stock asserted that they possessed the sole right to vote for the election of directors for the ensuing year, for the reason that a full year's dividend at 6% had been declared and paid to the holders of the preferred stock during the year 1942; thus causing the right to elect the directors to revert to the holders of the common stock under the provisions of Article V aforesaid.

A demurrer was interposed by the preferred stockholders to such an interpretation as asserted. Rather, they said that as of December 12, 1942, and thereafter, the corporation was in default in respect to the declaration and payments of dividends in the amount of two years' dividends upon the preferred stock, and, while the voting period of the preferred stock was terminated by reason of the payment of a full year's dividend at 6%, yet, the right to an election was not terminated but survived, and such right was subject to no further conditions than those to which it previously was subjected, and that it may be exercised as often and as long as the corporation shall be found to be in default of the payment of 6% dividends on the preferred stock in the amount of two years.

Necessity does not require a restatement of the facts and the application thereof to the provisions of said article prior to May, 1943, except to say that as of this date the corporation was in default for a period greater than two years in the payment of dividends on the preferred stock. This is so for the reason that it is conceded by the litigants that the preferred voting period which commenced in 1936 came to an end by reason of the payment of a 6% dividend during the year 1942 on the preferred stock, and that thereupon the right to vote reverted to the holders of the common stock. The question is, could the holders of the preferred stock as of the meeting held on May 4, 1943, elect to exercise a new or second voting period without the corporation being in a new or second default in the payment of dividends?

The appellees on page 5 of their brief state:

"The preferred stockholders needed to retain exclusive voting power in view of this tremendous default quite as much as if there had not been a period in the course of the default when 6% dividends were paid in the course of a year. Surely they needed to retain the voting power much more than when first they had the right to exercise it by reason of the existence of a default in the amount of two years' dividends."

The need of the preferred stockholders to retain the voting power is not material. The question relates only to their right of election as of the 1943 meeting.

In considering the language with the thought of proper interpretation, the thing looked for is the association of ideas that it expresses. With this in mind the words employed must be given their plain and ordinary meaning in the order of the grammatical arrangement in which they are found.

Now before an attempt is made to interpret the language of said article the legal significance of the words "preferred stock" must be understood. Surely, their use, unless supplemented by a definition of their significance, carries no special import. *Gaskill v. Gladys Belle Oil Co.*, 16 *Del. Ch.* 289, 146 *A.* 337. This being so the holder of preferred stock must look to the language of the charter for the discovery of his special rights, and, since special rights attaching to stock are in the category of exceptions, such rights must be clearly expressed, as a presumption will not exist in their favor. *Holland v. National Automotive Fibres, Inc.*, 22 *Del.Ch.* 99, 194 *A.* 124. It is with this understanding that I shall interpret the entire language, in order to ascertain the respective rights of the respective classes of stock as of the 1943 meeting.

Four sentences constitute the paragraph of Article V to be interpreted. Under the first sentence the language clearly denotes that the exclusive voting rights and power of management are to repose in the common stock, except upon the occurrence of a certain condition precedent, "that if at any time the corporation shall be in default in respect to the

declaration and payment of dividends in the amount of two years' dividends on the preferred stock, then the holders of a majority of the preferred stock shall have an election to exercise the sole right to vote for the election of directors and for all other purposes." It is apparent up to this point that the voting power does not shift to the holders of the preferred by reason of the occurrence of the condition precedent. It remains in the holders of the common unless the preferred elect to exercise their sole right to vote. This characteristic furthers the previously announced intent that the voting power should repose in the common stock. Certainly this exception was included as a protection to the preferred stockholders, and the exercise of the right granted rests solely within their discretion. Now, in the event the right of election is exercised, the duration of its existence is expressed in clear and unequivocal language. It shall continue "until the corporation shall have declared and paid for a period of a full year a 6% dividend on the preferred stock." Upon the happening of this event, the language is equally clear and definite as to what shall occur "when the right to vote for the election of directors, and for all other purposes, shall revert to the holders of the common stock."

It is conceded by the appellees on page 25 of their brief that, if the paragraph ended here, the rights previously given to the holders of the preferred stock would be seriously impaired, in view of the fact that the corporation was still in default in respect to the declaration and payment of dividends on the preferred stock in an amount of two years. This is so, I presume, for the reason that in the absence of a saving clause the exercise of an election exhausts the right given to the preferred stockholders under this sentence.

The second sentence defines the procedure by which the holders of the preferred stock shall designate their election.

The third sentence provides that the holders of the common stock shall have no right to vote during the time within

which the holders of the preferred stock are exercising their sole right to vote under their election.

The fourth sentence provides "the said right of the preferred stock and its holders to exercise an election to vote shall survive any exercise of such election and subsequent reversion of the right to vote to the common stock and its holders, and shall be a continuing privilege and right of said preferred stock, and the subsequent right to a reversion of the voting power to the common stock in the event of the payment of a full year's 6% dividend shall be a continuing privilege and right of said common stock and its holders." Now what was intended by the employment of this language? The majority of the court admits that the voting period of the preferred ended in 1942 at which time the right to elect the directors reverted to the holders of the common, yet, they say that by reason of the fourth sentence the right to an election as set forth in the first sentence was not terminated but survived, and was subject to no further condition than those to which it was previously subjected; that is, the corporation being in default in the declaration and payment of dividends in an amount of two years. If such a preference or right was intended, it must be said that it was not clearly expressed either by words of explicit import or by necessary implication. It is evident to me that by their interpretation they have rewritten the contract. They have ignored the language of the until clause of the first paragraph, and, by reason thereof, have changed the position of the respective stockholders from that as clearly indicated.

I am of the opinion that the right of election that existed prior to 1942 was terminated in the year 1942, and that the voting power shifted as of then to the holders of the common stock. The language of the fourth sentence does not enlarge the rights previously granted to the holders of the preferred stock in the first sentence, nor can it be said to grant a new voting right to either the preferred or the common stockholders. It is clear to me that under this sentence the only

function of the language is to make it plain that the right of the preferred to exercise an election, and the subsequent right of the common to a reversion, when once vested would not be forever lost, but that they become contingent, so to speak, and may be regained as rights *in praesenti* when another state of events occur to satisfy the conditions upon which the exercise of those rights respectively depend. This sentence was designed to preserve the rights, but not the particular condition which gave rise to the exercise thereof.

My conclusion is that the holders of the common stock possessed the sole right to vote for the election of directors for the ensuing year, as of the 1943 stockholders' meeting.

On Petition for Reargument.

Petition for reargument denied.