JOHN J. BLANDIN,
Plaintiff-Appellant,

*vs.*

UNITED NORTH and SOUTH DEVELOPMENT COMPANY, a dissolved corporation of the State of Delaware,
Defendant-Appellee.

*Supreme Court on Appeal, New Castle, October 3, 1957.*

*Ernest S. Wilson, Jr.,* of Morford & Bennethum, Wilmington, for appellant.

*John P. Sinclair,* of Berl, Potter & Anderson, Wilmington, for appellee.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

SOUTHERLAND, Chief Justice: The essential question in this case is whether, under the language of a corporate charter, dividends on cumulative preferred stock are cumulative from the date of the issue of the stock, or from an earlier date.

United North and South Development Company is a Delaware corporation. Its authorized capital consists of common stock and two series of preferred stock, "A" and "B". This suit concerns the dividend preferences of the preferred stock. With respect to such preferences, article Fourth of the Certificate of Incorporation, as amended, provides:

"* * * The preferred stock, both Series 'A' and 'B', is to be preferred equally as to dividends and assets, and shall pay dividends at the rate of six per cent (6%) per annum out of its earnings, but when not so earned and paid, the dividends so provided shall be cumulative. Said dividends shall be paid annually beginning the Fifteenth (15th) day of March, 1938."

These shares were authorized pursuant to a plan of reorganization approved in February, 1937. From time to time thereafter

shares of preferred stock were issued, but no dividends were paid until 1953.

On March 2, 1945, 100 shares of theretofore unissued Series "A" stock were issued to J. Kenneth Blackmar. In 1951 Blackmar sold his shares and Blandin, the plaintiff below, bought them.

On September 8, 1954, United declared a dividend on the shares of Series "A" and Series "B" preferred stock of all dividends unpaid and accrued to March 15, 1954. Plaintiff was tendered all dividends accrued on his shares from March 2, 1945, the date of issuance, to March 15, 1954. He demanded, however, that he be paid additional dividends for the period from March 15, 1938, to March 2, 1945. The corporation refused his demand, and he brought suit.

The Vice Chancellor gave judgment for the defendant, holding that United's charter does not require payment of arrears of dividends on the preferred shares for any period before issuance. Plaintiff appeals.

■ As we view the case, the essential question is this: What is the meaning of the language of the certificate of incorporation defining the dividend preferences of the preferred stock? Plaintiff says that the sentence—

> "Said dividends shall be paid annually beginning the Fifteenth (15th) day of March, 1938."

—means that the dividends are cumulative after that date. This contention comes to this: that it was the intention of the framers of this charter that a dividend liability should accumulate on *unissued* stock.

This contention is unacceptable. The charter does not say: "Dividends shall be cumulative after March 15, 1938." It merely says that "the dividends so provided shall be cumulative". The natural meaning of this clause is that the preferred shares shall when issued have the usual attributes of cumulative preferred stock, namely, that no dividend may be paid on the common shares until the current dividend on the issued stock and all arrears, if any, shall have been paid in full. The natural meaning of the sentence upon which plaintiff relies (quoted just above) is that dividends on issued stock shall not

begin to accrue until March 15, 1938. Thus, stock that might be issued during the year 1937 (for example) was not entitled to any dividend until March 15, 1938.

■ Our construction of the two clauses in the charter comports with the well-settled principle that preferences attaching to shares of stock "ought to be clearly expressed, if not by words of explicit import, at least by necessary implication." *Holland v. National Automotive Fibres,* 22 *Del.Ch.* 99, 194 *A.* 124, 126. Particularly is this so where, as here, an unusual—indeed, an extraordinary—right is claimed for the preferred shareholders. The concept of preferred dividends accumulating on stock before it is issued is quite foreign to the basic principle that a dividend is ordinarily a return on an investment. *Penington v. Commonwealth Hotel Construction Corp.,* 17 *Del.Ch.* 394, 155 *A.* 514, 75 *A.L.R.* 1136. A requirement that arrearages of dividends shall cumulate on unissued preferred stock would obviously create difficult problems with respect to the relative dividend rights of the preferred and the common shareholders, unless such relative rights were spelled out and specifically defined in the charter. For example, suppose that United had issued no preferred shares for three years after 1937, but during those years it had had substantial net earnings. Could such earnings be distributed to the common stockholders without establishing a reserve for the accumulations on the unissued preferred? Nothing in the language of this charter remotely suggests that it was the intention of its framers to saddle the management of the corporation with any such problem.

We have above cited the decision of the Court of Chancery in the *Holland* case. That case is the only decision that counsel have found dealing with the subject of accumulations on unissued preferred stock. The charter there involved contained two clauses, directly contradictory. One clause provided that the dividends should be cumulative after January 1, 1930; the other clause provided that the dividends should be cumulative from the dates of the issue of the shares. The conflict was resolved against the claim that dividends accumulated from January 1, 1930. Chancellor Wolcott stated the question before him as follows:

"The precise question is this—when does the accumulation of arrearages on the Class 'A' common stock Series 1, issued in 1935, commence—from January 1, 1930, when the stock was authorized or from the dates respectively of its issue?"
He added this significant comment:

"If it were not for the peculiar language of the charter amendment of March 15, 1930, the question which the case puts would be subject to an abrupt answer."

The pertinency of this observation is obvious. No one could reasonably suppose that in the absence of clear and unmistakable language in the charter dividends accumulate on unissued preferred stock. There is no such language in the United charter. Plaintiff's contention is accordingly rejected.

Plaintiff devotes a large part of his briefs to a contention that the doctrine of estoppel applies to the case. We have had some difficulty in understanding this argument. Plaintiff's main brief says that plaintiff in 1951 investigated "through Standard and Poor's and other regular sources of financial information" the status of the Series "A" preferred stock of United. He then asserts: "Standard and Poor's reported that no dividends had ever been paid and the dividends were cumulative from March 15, 1938." It was conceded at the argument that the latter part of this statement is not supported by the record. There is no evidence whatever that United, or anybody else, ever made any representation whatever to plaintiff with respect to the time at which dividends began to accumulate. Hence there is no basis for any claim of estoppel under plaintiff's own theory. In so holding, we imply nothing upon the question whether a misinterpretation of the legal effect of a charter provision could be the basis for an estoppel against the corporation. That question is not presented.

At other places in the briefs plaintiff appears to contend that the language of the certificate of stock issued to plaintiff contains a statement that dividends are cumulative from March 15, 1938, and that the corporation is estopped to deny this statement. The language of the stock certificate is identical with that of the charter. Hence

plaintiff's estoppel contention based on the stock certificate is reduced to the primary question in the case: What is the meaning of the language of the charter? That question we have considered and decided against plaintiff.

Plaintiff also suggested at the argument that even if United could not legally provide for accumulations on unissued preferred stock it is nevertheless estopped to deny that it had power to do so. No question of such corporate power is presented here and we do not consider it.

We are in accord with the conclusion of the Vice Chancellor, and the judgment is affirmed.