Richard M. COHN and Alan R. Kahn, as Trustee U/A2 of W/O Sterling D. Spero f/b/o Bertha K. Spero, Plaintiffs,

v.

CROCKER NATIONAL CORPORATION, Crocker National Bank, Midland Bank, p.l.c., and Midland California Holdings, Limited, Defendants.

Court of Chancery of Delaware,
New Castle County.
Submitted: Jan. 30, 1985.
Decided: Feb. 7, 1985.

Victor F. Battaglia, and Pamela S. Tikellis, Biggs & Battaglia, Wilmington, of counsel: Sidney B. Silverman, and Joan T. Harnes, Silverman & Harnes, New York City, for plaintiffs.

Michael D. Goldman, and James F. Burnett, Potter, Anderson & Corroon, Wilmington, of counsel: W. Foster Wollen, and Franklyn D. Fimball, Shearman & Sterling, New York City, for defendants, Midland Bank, p.l.c., and Midland California Holdings, Limited.

Richard L. Sutton, Paul P. Welsh, and Kenneth J. Nachbar, Morris, Nichols, Arsht & Tunnell, Wilmington, of counsel: Melvin R. Goldman, and Preston Moore, Morrison & Foerster, San Francisco, Cal., and Cheryl Lee Johnson, Los Angeles, Cal., for defendant, Crocker National Corp.

HARTNETT, Vice Chancellor.

Plaintiffs seek a preliminary injunction to prevent the submission to this Court of a proposed class action settlement which the parties in another case pending in this Court (Consolidated Civil Action No. 7405–NC, *In Re Crocker Shareholders Litigation*) are preparing to present to the Court for approval.

The plaintiffs in the present case, after several prior class action suits had been filed by others, brought this purported class action on behalf of the holders of preferred stock in Crocker National Corporation, a Delaware corporation ("Crocker"). The plaintiffs allege that the holders of the preferred stock are entitled to a vote on the pending merger of Crocker with a subsidiary of defendant Midland Bank, plc ("Midland"), which is the majority holder of Crocker common stock through its subsidiary, defendant Midland California Holdings, Limited ("Midland Holdings"). They further allege that the preferred stockholders have a right to vote on the merger which can not be abrogated by the proposed settlement.

The plaintiffs have shown neither the reasonable probability of success on the merits nor that they will suffer irreparable harm if their prayer for injunctive relief is denied and therefore the application for a preliminary injunction must be denied.

I

Plaintiffs are the co-owners, as trustees, of 500 shares of Crocker's $2.1875 preferred stock of which over one million shares are outstanding. Midland Holdings is the owner of 57% of Crocker's outstanding common shares.

In July of 1984 Midland announced a proposal whereby it sought to merge Crocker with a wholly-owned subsidiary of Midland and thereby obtain 100% ownership of Crocker common stock. The merger proposal provided for the minority's common shares to be converted into a new Adjustable Rate Preferred Stock.

A great deal of litigation has been generated by recent activities surrounding Crocker. Stockholder derivative actions were first initiated in December of 1983 in this Court attacking certain transactions of Crocker arising because of its financial problems which were eventually amended and supplemented to reflect claims arising out of the merger proposal. Other suits were also brought in this Court in direct response to the merger proposal. There are also actions in Federal Court in California alleging securities law violations.

In October of 1984 all of the parties in all of the pending lawsuits—except in the case now before me—entered into a "Settlement Agreement in Principle". This was submitted for informational purposes to this Court on November 28, 1984, without a request that the Court consider its merits. It is agreed that a revised final version of the Settlement Agreement is being pre-

pared and will shortly be ready to be submitted to the Court for its approval—after notice to all shareholders of Crocker.

On November 29, 1984, all the suits pending in this Court involving Crocker were consolidated except the present action which was not consolidated and remains a separate suit although it is conceded by plaintiffs' attorneys that a settlement of the consolidated action would effectively moot this action.

The thirteen named plaintiffs in the consolidated action include holders of both common and preferred stock. The Settlement Agreement in Principle provides, in effect, that the Settlement, if approved by the Court, will settle and dispose of all pending litigation concerning Crocker, including the California cases and all the Delaware cases. The final Settlement Agreement will, apparently, provide that all the common stock of Crocker will be cancelled although Crocker will survive. The present minority holders of common stock of Crocker will receive a new Adjustable Rate Preferred Stock and the present holders of the $2.1875 preferred stock will have their existing right to convert to Crocker common stock changed to a right to convert to the new Adjustable Rate Preferred Stock. Midland, through a subsidiary, will receive all of the new common stock of Crocker but the Agreement is structured in such a manner that Midland will not receive a direct exchange of new common stock for the common stock which it now holds.

## II

All concede that the rights of the preferred stockholders were set forth in the Certificate of Voting Powers, Designation, Preferences, etc. as adopted by a corporate resolution providing for the issuance of the stock adopted pursuant to 8 *Del.C.* § 151(a) ("The Certificate").

Plaintiffs rely on § (f)(2) of The Certificate which states:

"While any of this Series [Preferred $2.1875] is outstanding, the Corporation, without first obtaining the consent, either expressed in writing or by affirmative vote at a meeting called for that purpose, of the holders of at least two-thirds of the shares of this Series then outstanding, shall not adversely change or alter the powers, preferences and relative participating, optional and other special rights of this Series."

Plaintiffs claim that the proposed change of the conversion rights of the $2.1875 preferred stock is such a change in the powers, preferences and relative participating, optional and other special rights of the preferred as to require the two-thirds majority class vote by the present owners of the preferred stock.

Defendants, on the other hand, cite § (e)(5) of The Certificate as being applicable. It reads:

"In case of any consolidation or merger of the Corporation with or into any other corporation, or in case of any sale or conveyance to another corporation of the property and assets of the corporation as an entirety or substantially as an entirety, the holder of each share of this Series then outstanding shall have the right thereafter to convert such share into the kind and amount of shares of stock and other securities and property receivable upon such consolidation, merger, sale or conveyance by a holder of that number of shares of Common Stock into which one share of this Series might have been converted immediately prior to such consolidation, merger, sale or conveyance ..."

Defendants contend that this section controls rather than § (f)(2) because under the proposed restructuring, the preferred shareholders will receive a right to convert their preferred shares into the new Adjustable Rate Preferred Stock to be issued, which is the same Adjustable Rate Preferred Stock which the present minority common stock holders will receive in place of their present common stock.

Plaintiffs correctly point out, however, that Midland—the present majority common stockholder of Crocker—will indirectly receive the new common stock and not the Adjustable Rate Preferred Stock.

### III

A preliminary injunction is an extraordinary remedy and will only be granted to prevent truly irreparable injury. *Gimbel v. Signal Companies, Inc.*, Del.Ch., 316 A.2d 599 (1974), *aff'd.*, Del.Supr., 316 A.2d 619 (1974). In order to be entitled to this remedy, a plaintiff, in addition to other showings, must show a reasonable probability of ultimate success on the merits. *Id.*

Plaintiffs seek a preliminary injunction. They could have waited and brought their claims forth as objections in the Settlement Hearing once the settlement is formally proposed and a hearing is scheduled on whether it should be approved after notice to all the shareholders of Crocker. Chancery Court Rule 23(e) requires that no class action shall be dismissed, settled, or compromised without the approval of the Court and the opportunity of objectors to be heard. The Court will approve a settlement only when, in the exercise of its business judgment, it finds the proposed settlement to be fair. *Neponsit Investment Co. v. Abramson*, Del.Supr., 405 A.2d 97 (1979).

All of the arguments raised by the plaintiffs could be raised at the as yet unscheduled settlement hearing, thus giving the plaintiffs an adequate remedy. This precludes plaintiffs' argument that they are likely to suffer irreparable harm if a preliminary injunction is not granted. This alone would be sufficient grounds to deny plaintiffs' application. Considerations of judicial efficiency also mandate that the objections to a proposed settlement of a class action suit usually be heard but once—and together. A separate hearing on plaintiffs' objections was granted only because the objection raised the issue of whether the vote of the preferred stockholders was absolutely required.

### IV

■ The Certificate is a contract between the corporation and the stockholder which provides the rights and preferences of the shares and must be construed as such. *Holland v. National Automotive Fibres, Inc.*, Del.Ch., 194 A. 124 (1937); *Broad v. Rockwill International Corp.*, 5th Cir., en banc, 642 F.2d 929 (1981), *rev'g.* 5th Cir., 614 F.2d 418 (1980), *cert. denied*, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981).

A Court must construe contracts as they are made and give to language that is clear the force and effect which the language clearly demands. *Hajoca Corporation v. Security Trust Co.*, Del.Super., 25 A.2d 378 (1942). If the words have a plain meaning, without ambiguity, there is no room for interpretation or a search for the intent of the parties on the part of the Court. *Myers v. Myers*, Del.Supr., 408 A.2d 279 (1979). The Court may not, in the guise of construing a contract, rewrite it to supply an omission in its provisions. *Conner v. Phoenix Steel Corp.*, Del.Supr., 249 A.2d 866 (1969). Contracts are, however, to be construed liberally so as to carry out the intentions of the parties. *DuPont v. Wilmington Trust Co.*, Del.Ch., 45 A.2d 510 (1946). Furthermore, a paragraph should not be read in isolation but must be read in the context of the entire instrument. *Hudson v. D & V Mason Contractor, Inc.*, Del.Supr., 252 A.2d 166 (1969).

### V

In the view of the defendants, if the language of The Certificate is considered as a whole, the provisions of § (e)(5) cover the present controversy. Under that section, if there is a merger or consolidation, holders of the $2.1875 preferred stock are to receive the right to convert their stock into whatever the common stockholders receive as a result of the merger or consolidation. This is the right guaranteed by § (e)(5). Only if the right to receive that which the holders of the common stock will

receive were abrogated would the provisions of § (f)(2) apply.

Plaintiffs have argued that the language of § (e)(5) does not permit the merger which is proposed without a vote of the preferred stockholders because Crocker is to be the surviving corporation and will not be merged into another corporation. Defendants counter that plaintiffs read too much into the language and that the section quite clearly states that it applies to any consolidation or merger of the Corporation with or into any other corporation.

Even if the provisions of § (e)(5) apply to the proposed transaction, plaintiffs point out that it is also necessary to consider whether all the requirements of § (e)(5) are being met. If they are, no rights have been altered and § (f)(2) is not applicable. Plaintiffs claim that the language requires that the holders of the $2.1875 preferred stock have the right to convert into whatever is received in exchange for the common stock—not whatever is received only by the minority for their common stock. Plaintiffs urge that if Midland is to receive, directly or indirectly, new common stock for its old common stock, the rights of the $2.1875 preferred stock would be altered in such a way as to require a two-thirds majority vote of holders of the $2.1875 preferred stock, even if § (e)(5) would otherwise preclude the necessity for a vote by the preferred shareholders.

Defendants have countered that the merger proposal in its present state does not call for Midland to directly receive new common stock in exchange for its old common stock. Section 1(a) of the "Agreement in Principle", attached to the affidavit of Mr. Singley, does provide that the old common stock now held by Midland will be converted into new common stock. Defendants' attorney stated at the hearing, however, that this is no longer true. Shortly after the hearing defendants submitted a revised Singley affidavit which now states that the Settlement Agreement will require that all common shares owned by Midland will be cancelled and the new common

stock will be issued, in exchange, to a wholly-owned subsidiary of Midland. Thus, they claim, no common shareholder will be directly receiving something other than the Adjustable Rate Preferred Stock.

It is clear, however, that while Midland will not directly receive any of the new common stock it will indirectly receive it through a wholly-owned subsidiary.

The minority common stockholders, therefore, will receive—as a result of the merger—the Adjustable Rate Preferred Stock—the same new preferred stock which the holders of the present $2.1875 preferred stock will be able to receive. The majority stockholder, however, will not receive this new Adjustable Rate Preferred Stock but will receive, indirectly, new common stock of Crocker.

Plaintiffs also urge that the rights of the holders of the $2.1875 preferred stock are also protected by 8 *Del.C.* § 242 which provides that a corporation may amend its Certificate of Incorporation—but subject to the requirement that "the holders of the outstanding shares of a class shall be entitled to vote as a class upon a proposed amendment, ... if the amendment would ... alter or change the powers, preferences or special rights of the shares of such class so as to affect them adversely ..." 8 *Del.C.* § 242(b)(2). Defendants point out that this provision only applies to amendments to the Certificate of Incorporation—not to mergers. See *Federal United Corp. v. Havender*, Del.Supr., 11 A.2d 331 (1940); *Hottenstein v. York Ice Machine Corp.*, 3d Cir., 136 F.2d 944 (1943).

## VI

It is therefore apparent that there is a genuine good faith dispute as to whether the present holders of the $2.1875 preferred stock have the right to vote on the merger.

■ No party has cited any cases squarely on point as to whether the dispute before the Court may be compromised without the Court's ruling on the merits of

the dispute. The general rule of law, however, appears to be that any genuine good faith dispute may be compromised. 15A C.J.S., *Compromise & Settlement* § 3 (1967); 15A AM.JUR.2d, *Compromise & Settlement* § 15 (1976); see *Giuricich v. Emtrol Corp.*, Del.Supr., 449 A.2d 232 (1982); *Murtaugh v. University Computing Co.*, 5th Cir., 490 F.2d 810 (1974), *cert. denied,* 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 62 (1978).

■ I therefore find that the disputed right of the holders of the $2.1875 preferred stock to vote on the proposed merger is subject to compromise.

The issue therefore becomes whether the proposed compromise is a settlement which is fair. This can only be addressed after the final version of the Settlement Agreement is presented to the Court and after a hearing at which time the Court can consider those factors which it needs to know in order to exercise its business judgment.

IT IS SO ORDERED.