**In re BICOASTAL CORPORATION, a Delaware corporation.**

Supreme Court of Delaware.

Submitted: March 26, 1991.
Decided: March 26, 1991.
Opinion Issued: Nov. 20, 1991.

Grover C. Brown and Edward M. McNally (argued), Morris, James, Hitchens & Williams, Wilmington, for intervenor below-appellant John E. Roth.

Craig B. Smith (argued), Vicki A. Hagel, Lassen, Smith, Katzenstein & Furlow, Wilmington, for intervenors below-appellants David Tallant and Harry Steffen.

Robert K. Payson, James F. Burnett, Michael B. Tumas, Arthur L. Dent, Potter, Anderson & Corroon, Wilmington, for defendant below-appellant Bicoastal Corp.

Charles F. Richards, Jr., R. Franklin Balotti (argued), Nathan B. Ploener, David L. Finger, Matthew J. Ferretti, Richards, Layton & Finger, Wilmington (Baker & Botts, Houston, Tex., of counsel), for plaintiff below-appellee Mesa Holding.

Before CHRISTIE, C.J., HORSEY and MOORE, JJ.

CHRISTIE, Chief Justice:

In this case the Court is called upon to decide whether the exercise of a secured creditor's right to elect a majority of the board of directors of its debtor was a valid corporate act under the circumstances here present. The creditor's election right was created as part of a complex scheme to protect its substantial investment in the debtor, and it was agreed that it would be triggered upon the failure by the debtor to repay its debt by a specified date. Although the exercise of its election right was delayed by an intervening order of the United States District Court enjoining the debtor from repaying its debt and an intervening order of the United States Bankruptcy Court issuing an automatic stay on behalf of the debtor, we conclude that the election right was valid, and the creditor was entitled to and did validly exercise its right to elect a majority of the board of directors of the debtor.

This is a consolidated appeal from the order of the Court of Chancery, dated February 11, 1991, granting a declaration, pursuant to 8 *Del.C.* § 225, that Mesa Holdings Limited Partnership ("Mesa"), appellee/plaintiff below, was entitled to elect and had validly elected three directors to constitute a new majority of directors of the board of Bicoastal Corporation, appellant/defendant below. In a second order also dated February 11, 1991, the Court of Chancery denied the motions of intervenor appellants John E. Roth, a holder of Bicoastal Senior Preferred Stock, and David Tallant and Harry Steffen, the two minority directors, to intervene as defendants in the Chancery action. On February 13, 1991, the Court of Chancery granted the post-judgment motions of Roth, Tallant, and Steffen to intervene, however, the motion of Tallant and Steffen for a stay pending appeal was denied. Following the denial of the motion for a stay pending appeal by the Court of Chancery, the intervenors appeal-

ed to this Court. Tallant and Steffen also filed a motion for a stay pursuant to Supreme Court Rule 32(a) in this Court. At the conclusion of argument on these motions on February 15, 1991, we ruled that a stay was to be entered, conditioned upon the filing of a bond with the Court of Chancery in the amount of $25,000, and we further ruled that the appeals of Roth, Tallant, and Steffen were to be consolidated with an appeal to be filed by Bicoastal. This Court then entered an order consolidating the appeals, staying the first order of the Court of Chancery dated February 11, 1991, and setting an expedited briefing schedule. On this appeal, appellants contend that the Court of Chancery erred by ruling that: 1) Mesa properly rejected Bicoastal's redemption tender of November 20, 1989; 2) the preference arising from the nonredemption provision contained in the Bicoastal certificate of incorporation was valid under 8 *Del.C.* § 151(a); and 3) Bicoastal's contractual obligation to recognize Mesa's election right under the terms governing the junior note and junior preferred stock was not rendered impossible by the injunction issued by the United States District Court for the District of Maryland. After oral argument on March 26, 1991 on the above contentions, this Court issued an order affirming the ruling of the Court of Chancery and announced that an opinion would be filed later.

## I. Facts

On January 31, 1988, pursuant to a junior financing agreement, Mesa, a Delaware limited partnership, agreed to provide $150 million of financing to the Singer Acquisition Company, a Delaware corporation formed by and wholly owned by Bilzerian Partners Limited Partnership ("BPLP") to acquire the Singer Company, a New Jersey corporation.[1] Bicoastal, a Delaware corporation, is the successor in interest to both of these corporations.[2] Pursuant to the junior financing agreement, Mesa paid $1 million for all 1,000 shares of the $185 junior cumulative redeemable preferred stock (the "junior preferred") of the Bicoastal corporation. In addition, Mesa made a loan of $147.9 million to Bicoastal evidenced by a junior subordinated promissory note (the "junior note").[3]

In order to secure its investment in Bicoastal, Mesa negotiated for and received three protective covenants: 1) a "nonredemption provision" in the Bicoastal certificate of incorporation; 2) a "restricted payment clause" in the junior note; and 3) an election right provision in the Bicoastal certificate of incorporation which granted Mesa, as the sole junior preferred shareholder, a right to elect a majority of directors of the Bicoastal board if Bicoastal failed to redeem the junior preferred stock by the mandatory redemption date (the "election right"). Although the junior preferred stock could be redeemed by Bicoastal "at any time", Bicoastal was still bound by the terms of the nonredemption provision and the mandatory redemption provision.

The "nonredemption provision" prohibited Bicoastal from redeeming the junior preferred stock if such redemption would violate any covenant contained in "any contract, agreement, obligation, or guarantee" of Bicoastal (i.e. the restricted payment clause of the junior note).[4] The "restricted

---

1. Other financing for the acquisition (initially totalling $1.4 billion) was provided by various banks and by Shearson Lehman Brothers Holdings, Inc.

2. Unless the context otherwise requires, the term "Bicoastal" includes its predecessors and all of the appellants.

3. Mesa also purchased 2,000 shares of Class B common stock of Bicoastal for $1.1 million. In March 1989, the Class B common stock was repurchased by Bicoastal in exchange for $20.4 million in notes which remained unpaid as of March 26, 1991.

4. 4. *No Redemption if in Violation.*
   Notwithstanding anything contained elsewhere herein, the Corporation shall not redeem any shares of Junior Preferred Stock without the express written consent of the holders thereof if such redemption would violate *any covenant of the Corporation in any contract, agreement, obligation or guarantee of the Corporation,* including any covenant of another person, performance of which is guaranteed by the Corporation. (Emphasis supplied.)

payment clause" in the junior note prohibited any redemption of any capital stock of Bicoastal unless the junior note had been fully satisfied. Therefore, under the terms of this secured transaction, Bicoastal obligated itself to satisfy the substantial junior note (approximately $73 million outstanding) AND to redeem the junior preferred stock prior to the mandatory redemption date or risk losing control of the board to Mesa through Mesa's exercise of its election right.[5] The mandatory redemption date was April 22, 1989, but was later extended by agreement of the parties to July 1, 1989.[6] The redemption price for the junior preferred stock was $1 million.

However, prior to the mandatory redemption date, the federal government brought suit against Bicoastal alleging that Bicoastal had engaged in a scheme to defraud the government in negotiation of defense contracts. Aware of Bicoastal's continuing liquidation of its assets to pay down debt, the United States District Court for the District of Maryland issued a preliminary injunction dated May 24, 1991 prohibiting Bicoastal from further disposing of any assets outside the ordinary course of business. The United States Court of Appeals for the Fourth Circuit affirmed in November 1989. *U.S. ex rel. Taxpayers Against Fraud v. Singer Co.*, 722 F.Supp. 1248 (D.Md.1989), *aff'd*, 889 F.2d 1327 (4th Cir.1989). The United States District Court considered a redemption of the junior preferred stock to be outside the ordinary course of business.

After Bicoastal failed to redeem the junior preferred stock by the mandatory redemption date of July 1, 1989, Mesa eventually gave notice to Bicoastal on November 6, 1989 of its intent to exercise its election right, such notice being required by the election right provision of the certificate of incorporation. Accordingly, it appears that Mesa would have been entitled to exercise its election right on November 21, 1989 upon the expiration of a fifteen-day notice period provided for in the election right provision. However, on November 10, 1989, before Mesa was able to go forward with its election right, Bicoastal filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "Bankruptcy Court"). On November 15, 1989, both Mesa and Bicoastal filed motions seeking relief from the stay which issues automatically upon the filing of a petition in bankruptcy pursuant to 11 U.S.C. § 362. Bicoastal's motion requested the permission of the Bankruptcy Court to redeem the junior preferred stock. Bicoastal intended to finance the redemption through a capital contribution from a third party (BPLP). Mesa's motion sought a declaration that the automatic stay did not apply to Mesa's exercise of its election right or, in the alternative, an order granting relief from the stay to permit the exercise of that right. The Bankruptcy Court denied both motions on November 22, 1989. The Court concluded that the automatic stay did apply to Mesa's election right and denied Mesa's motion without prejudice. The Court also denied Bicoastal's request for permission to redeem the junior preferred without prejudice.[7] While the above

---

5. (e) *Voting Rights.* The voting rights of the Junior Preferred consist in relevant part of:

   2. Upon the failure of the Corporation to redeem *for any reason* the Junior Preferred Stock as and when required by the mandatory redemption provision in subdivision (d)1 hereof, the holders of Junior Preferred Stock shall have the right and option, *at any time* after such failure to redeem, to elect, with the holders of all outstanding shares of Junior Preferred Stock voting as a class separately from the holders of any other class or series of stock, that number of directors as shall, upon such election and at all times thereafter, constitute a majority of the Board of Directors

of the Corporation. (the "election right" provision) (emphasis supplied).

6. On March 21, 1989, Bicoastal and Mesa entered into an agreement pursuant to which Mesa agreed to defer the exercise of its election right until after July 1, 1989. Nothing in the agreement waived Mesa's election right or prevented Mesa from exercising the election right after July 1, 1989.

7. The Bankruptcy Court concluded: ...
   the right to redeem in the certificate was so closely tied to the repayment of the loan that it is clear that Bicoastal has no independent right to redeem the preferred stock, and it

motions filed by Mesa and Bicoastal were pending in the Bankruptcy Court, Mesa had rejected a redemption tender made by Bicoastal on November 20, 1989 on the grounds that the nonredemption provision prohibited redemption since the junior note had not yet been satisfied.

Mesa subsequently filed a motion dated December 15, 1989 requesting the Bankruptcy Court to reconsider its ruling and to lift the automatic stay in order to permit Mesa to exercise its election right. However, pursuant to a Stipulation of Compromise dated January 8, 1990 (the "stipulation"), Mesa and Bicoastal agreed to compromise and settle the motion for reconsideration and certain related disputes concerning Mesa's right to elect a majority of the board. In particular, the stipulation provided that if Bicoastal failed to satisfy the junior note in full and redeem the junior preferred stock by December 31, 1990, Mesa would be allowed an order modifying the automatic stay to permit Mesa to exercise its election right. The Bankruptcy Court approved the stipulation in an order dated March 7, 1990.

Upon Bicoastal's failure to satisfy the terms of the stipulation, Mesa obtained an order from the Bankruptcy Court effective January 22, 1991 modifying the stay to permit Mesa to exercise its election right, that is its right to designate a majority of directors of the Bicoastal board. Because the United States District Court had previously issued an order dated July 23, 1990 automatically approving any decision of the Bankruptcy Court on this matter, Bicoastal was able to proceed without obtaining an additional approval of the United States District Court. Thus, Mesa delivered to Bicoastal its executed written consent dated January 22, 1991, pursuant to 8 Del.C. § 225, by which it elected three new directors who would constitute the majority of directors of the Bicoastal board (the "new directors"). Immediately prior to January 22, 1991, Bicoastal's board consisted of two persons, Harry Steffen and

was clearly the intention of the parties that the right to redeem would be applied only if the obligation represented by the junior promissory note is paid in full.

David Tallant (the "minority directors"). The new directors duly and validly called a special meeting of the board, to be held at Bicoastal's offices in Tampa, Florida at 3:00 p.m. on January 24, 1991. In response, Bicoastal advised Mesa that its exercise of its election right was premature and ineffective and refused to recognize the election of the new directors. This litigation immediately ensued. The Court of Chancery ruled in favor of Mesa on February 11, 1991 declaring that Mesa gave adequate and legally effective notice to Bicoastal on January 22, 1991 of its election of the majority of directors of the Bicoastal board and that such election became effective fifteen days later on February 6, 1991, in the absence of a valid defense by Bicoastal.

## II.

### A.

■ Bicoastal's first contention on appeal is that the Court of Chancery erred by ruling that Mesa properly rejected Bicoastal's redemption tender of November 20, 1991. In response, Mesa contends that it was justified in rejecting the redemption tender for the following reasons: 1) The nonredemption provision was valid under 8 Del.C. § 151(a); 2) Bicoastal was independently prohibited from redeeming the junior preferred stock by the separate terms of other senior obligations such as the letters of credit issued by the Bank of Nova Scotia, a senior note held by Shearson, and the senior preferred dividend arrearage clause; and 3) Bicoastal lacked the requisite court approval from the United States District Court and the Bankruptcy Court to consummate the redemption of the junior preferred stock.

We agree with the ruling of the Court of Chancery that the nonredemption provision is valid under 8 Del.C. § 151(a) and that Mesa properly rejected Bicoastal's redemption tender because it was barred under the terms of the nonredemption provision. In

*In re Bicoastal Corp.,* No. 89–8198–8P1, at p. 9, Paskay, C.B.J. (Bkrtcy.D.M.D.Fla. November 22, 1989) (Order).

view of this finding, we find it unnecessary to address the merits of the contentions listed as the second and third justifications for rejecting the redemption tender advanced by Mesa.[8]

### B.

■ Bicoastal's second contention on appeal is that the preference arising from the nonredemption provision is invalid under 8 *Del.C.* § 151(a).[9] Section 151(a) provides:

(a) Every corporation may issue 1 or more classes of stock ... which classes ... may have such voting powers, full or limited, or no voting powers, and such designations, *preferences* and relative, participating, optional or other special rights, and qualifications, limitations or restrictions thereof, as shall be stated and expressed in the certificate of incorporation ... Any of the voting powers, designations, *preferences*, rights and qualifications, limitations or restrictions of any such class or series of stock *may be made dependent upon facts ascertainable outside the certificate of incorporation* ... provided that the manner in which such facts shall operate upon the voting powers, designations, *preferences*, rights and qualifications, limitations or restrictions of such class or series of stock is *clearly and expressly set forth* in the certificate of incorporation.

8 *Del.C.* § 151(a) (emphasis supplied). Bicoastal contends that the preference arising from the nonredemption provision fails to satisfy two requirements of 8 *Del.C.*

§ 151(a).[10] First, Bicoastal contends that the preference does not depend upon a *"fact* ascertainable outside the certificate of incorporation" but rather depends upon a legal conclusion that a redemption by Bicoastal would constitute a breach of the junior note's restricted payment clause. We find that Bicoastal was in a position to make the factual determination that a redemption would violate a covenant of Bicoastal by simply referring to the terms of the junior note or the terms of any other contract at issue. Bicoastal's other creditors and shareholders were similarly in a position to refer to the terms of such contracts since they were public documents available from the Securities Exchange Commission or available pursuant to the stockholders' statutory right to inspect corporate records. 8 *Del.C.* § 220.

■ Second, Bicoastal contends that the manner in which the preference is made dependent upon a "fact ascertainable outside the certificate of incorporation" is not *"clearly and expressly set forth"* in the certificate of incorporation as required by 8 *Del.C.* § 151(a). Bicoastal contends that the nonredemption provision is invalid because it makes the vague reference to "any contract, agreement, obligation, or guarantee" of Bicoastal rather than specifically naming in the certificate of incorporation each contract subject to its terms. According to Bicoastal, without such specification, the terms of the certificate of incorporation fail to provide sufficient information to enable other shareholders to adequately

---

8. It must be noted that Mesa did not raise below the lack of approval by the United States District Court for Bicoastal's redemption tender. Mesa did, however, raise the lack of the Bankruptcy Court approval below. We agree with Mesa that Bicoastal, as a debtor in bankruptcy, could not redeem the junior preferred without the approval of the Bankruptcy Court. 11 *U.S.C.* § 362. In fact, in its order dated November 22, 1991, the Bankruptcy Court denied without prejudice Bicoastal's motion requesting permission to redeem the junior preferred stock. The Bankruptcy Court viewed the election right as Mesa's creditor's remedy.

9. At oral argument, Mesa briefly contended that the nonredemption provision should be tested under 8 *Del.C.* § 151(b) which authorizes re-

demptions generally rather than 8 *Del.C.* § 151(a) which does not. However, Mesa contends the nonredemption provision is valid under 8 *Del.C.* § 151(a) in any event.

10. The preference granted to the junior preferred stock through the terms governing the nonredemption provision, the junior note's restricted payment clause, and the election right provision, consisted of two special rights: 1) Bicoastal was prohibited from redeeming the junior preferred stock unless it had also satisfied the junior note; and 2) if Bicoastal failed to satisfy the junior note and redeem the junior preferred stock prior to the mandatory redemption date, the junior preferred stockholder (Mesa) was entitled to elect a majority of the Bicoastal board.

ascertain their rights as against the special rights of the junior preferred stockholder. We disagree. In the recent case of *Waggoner v. Laster*, Del.Supr., 581 A.2d 1127, 1134 (1990), this Court stated:

A certificate of incorporation is viewed as a contract among shareholders, and general rules of contract interpretation apply to its terms. *Rothschild Int'l Corp. v. Liggett Group*, Del.Supr., 474 A.2d 133, 136 (1984); *Wood v. Coastal States Gas Corp.*, Del.Supr., 401 A.2d 932, 937 (1979). Courts must give effect to the intent of the parties as revealed by the language of the certificate and the circumstances surrounding its creation and adoption. *Judah v. Delaware Trust Co.*, Del.Supr., 378 A.2d 624, 628 (1977); *Ellingwood v. Wolfe's Head Oil Ref. Co.*, Del.Supr., 38 A.2d 743, 747 (1944). Since stock preferences are in derogation of the common law, they must be strictly construed. *Goldman v. Postal Telegraph Inc.*, 52 F.Supp. 763 (D.Del. 1943); *Baron v. Allied Artists Pictures Corp.*, Del.Ch., 337 A.2d 653 (1975), *appeal dismissed*, Del.Supr., 365 A.2d 136 (1976); *Holland v. National Automotive Fibres, Inc.*, Del.Ch., 194 A. 124 (1937); *Penington v. Commonwealth Hotel Constr. Co.*, Del.Ch., 151 A. 228 (1930), *rev'd in part*, 155 A. 514 (1931); *Gaskill v. Gladys Bell Oil Co.*, Del.Ch., 146 A. 337 (1929).

We find that certificates of incorporation commonly contain provisions which make broad and general reference to other "contracts, agreements, guarantees, or obligations" of the corporation. Bicoastal's contention that both present and future contracts must be specifically named in the certificate of incorporation is entirely impractical. The nonredemption provision clearly puts all relevant constituents on notice that Bicoastal is prohibited from redeeming the junior preferred stock if such redemption would violate any contract of Bicoastal. Therefore, the certificate of incorporation enables all interested persons to ascertain that their rights may be subject to the terms of other contracts which bind Bicoastal. *Gaskill v. Gladys Bell Oil Co.*, Del.Ch., 146 A. 337 (1929). Moreover,

we find that the parties clearly intended, as revealed by the circumstances surrounding the inclusion of the protective covenants in the certificate of incorporation and junior note, to grant a creditor's remedy to Mesa, a substantial creditor and the sole junior preferred shareholder, as part of this valid secured transaction. *Waggoner*, 581 A.2d at 1134. Applying the rule of strict construction as set forth in the *Waggoner* case, we conclude that the preference arising from the nonredemption provision is consistent with the statutory requirements of 8 *Del.C.* § 151(a).

Bicoastal also contends that the preference arising from the nonredemption provision is in violation of 8 *Del.C.* § 242 for two reasons. First, the preference would enable Mesa, a substantial creditor but minor equity holder, to elect a majority of the Bicoastal board without the other shareholders ever having the right to vote on the original authorization and issuance of the junior preferred stock. We find this contention to be without merit. The common shareholder knowingly bargained away its right to control the board when it agreed to Mesa's election right. In addition, the senior preferred shareholders never had the right to vote as a class on the amendment of the certificate of incorporation to authorize the issuance of the junior preferred stock because the junior preferred stock was never given superior liquidation or dividend rights over the senior preferred. Second, Bicoastal contends that the nonredemption provision rendered the certificate of incorporation illusory. According to Bicoastal, Mesa and Bicoastal could collusively enhance the preference held by Mesa by altering the terms of the junior note to increase the amount owed under the junior note effectively increasing the redemption price of the junior preferred stock to the prejudice of the other equity holders. Bicoastal contends that this would enable the parties to effectively amend the certificate of incorporation without the consent of the other equity holders in violation of 8 *Del.C.* § 242. This contention is also without merit. The mere fact that Bicoastal and Mesa could alter the

terms of the junior note does not change the original express terms of the certificate of incorporation which remain unaffected.

### C.

◼ Bicoastal's final contention on appeal is that even if the nonredemption provision is valid under 8 *Del.C.* § 151(a), Mesa was barred from exercising its election right because the injunction issued by the United States District Court temporarily suspended Bicoastal's duty to meet its contractual obligations under the terms governing the junior note and the junior preferred stock. We disagree for several reasons.

First, it is clear that the prohibition imposed by the injunction issued by the United States District Court was not intended to (nor did it) bar Mesa's exercise of its election right. The United States Court of Appeals for the Fourth Circuit expressly recognized that Mesa might exercise its election right when it stated: "Mesa's right to take control of the board, which has not been exercised, does not constitute irreparable harm." *U.S. ex rel. Taxpayers Against Fraud v. Singer Co.*, 889 F.2d 1327, 1335 (4th Cir.1989), *aff'g*, 722 F.Supp. 1248 (D.Md.1989).

Second, we find that the Court of Chancery correctly ruled that the doctrine of impossibility does not apply to "contingent, alternative promises" where only part of an obligor's performance is impracticable. *Yankton Sioux Tribe v. United States*, 272 U.S. 351, 357–58, 47 S.Ct. 142, 144, 71 L.Ed. 294, 297–98 (1926); *International Minerals & Chem. Corp. v. Llano, Inc.*, 770 F.2d 879, 885 (4th Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1196, 89 L.Ed.2d 310 (1986); *Cook v. El Paso Natural Gas Co.*, 560 F.2d 978, 982 (10th Cir.1977); *Crowley v. Commodity Exchange*, 141 F.2d 182, 198 (2d Cir.1944); 6 A. Corbin, *Corbin on Contracts* § 1330 (1962); *Restatement (Second) of Contracts* § 270 (1981). However, Bicoastal contends that the Court of Chancery erred because the "doctrine of alternative promises" refers only to a contractual obligation which may be discharged by the performance of one of two or more alternative promises. *See Restatement (Second) of Contracts* § 261, comment f (1981). According to Bicoastal, the promises here were not alternative because Mesa's exercise of the election right would not discharge Bicoastal's duty to redeem. Rather, the election right was a remedy for the breach of the promise to redeem which was rendered temporarily impossible by the injunction issued by the United States District Court. Since the injunction which rendered the duty to redeem temporarily impossible issued prior to the mandatory redemption date, Bicoastal contends that Mesa should not be able to exercise a remedy for a breach of a promise which was temporarily rendered impossible.

While we agree that the promises at issue here are not "alternative contractual promises" in the narrow sense advanced by Bicoastal, Bicoastal's obligation was nevertheless stated in the alternative: Bicoastal promised to redeem the junior preferred stock by the mandatory redemption date, or in default of that, Bicoastal promised to recognize Mesa's right to elect a majority of the board. Thus, although the injunction issued by the United States District Court temporarily suspended Bicoastal's obligation to pay off the junior note and to redeem the junior preferred stock, we find that it did not render impossible Bicoastal's alternative promise which granted Mesa its election right. We find support for this view in the case of *Wiggins v. Warrior River Coal Co.*, 696 F.2d 1356, 1359 (11th Cir.1983), where the court held that the doctrine of impossibility does not excuse nonperformance where the promisor has indicated an intent to assume the risk. We find that the parties here expressly provided for the contingency that Bicoastal might fail to redeem the junior preferred stock by the mandatory redemption date. The election right provision granted the election right to Mesa if Bicoastal failed to redeem *"for any reason"*. The cause of Bicoastal's inability to perform is irrelevant: failure to redeem by the mandatory redemption date *"for any reason"* triggered Mesa's election right.

In any event, we find that the injunction issued by the United States District Court became essentially irrelevant by January 22, 1991 when the Bankruptcy Court issued its order modifying the stay to permit Mesa to exercise its election right. The United States District Court had previously issued an order dated July 23, 1990 which automatically approved any future action of the Bankruptcy Court on this matter. Since Bicoastal had previously entered into the stipulation agreement, which evidenced its belief that performance was possible despite the existence of the prior injunction, Bicoastal may not now contend upon its failure to satisfy the stipulation that the injunction continues to render its duty to recognize Mesa's election right impossible. It appears that the Court of Chancery was justified in concluding that Bicoastal's failure to timely redeem the junior preferred stock was due to Bicoastal's lack of funds. Therefore, we conclude that the defense of impossibility is unavailable to Bicoastal in order to bar Mesa's exercise of its right to elect a majority of directors of the Bicoastal board.

In conclusion, we find that the Court of Chancery correctly ruled that Mesa gave adequate and legally effective notice to Bicoastal on January 22, 1991 of its election of the majority of directors of Bicoastal's board and that such election became effective fifteen days later on February 6, 1991. For these reasons, the order of the Court of Chancery is AFFIRMED.