to defend such action on the basis of judicial estoppel.[22]

Submit an order consistent with this opinion.

In re NEW YORK TRAP ROCK CORP.,
Lone Star Industries, Inc., et al.,
Debtors.

LACOS LAND COMPANY, a Nevada
corporation, Plaintiff,

v.

LONE STAR INDUSTRIES, INC.,
a Delaware corporation, Debtor
and Debtor In Possession;

and

Metropolitan Life Insurance Company,
a New York Mutual Insurance
Company, Defendant.

Bankruptcy Nos. 90 B 21276–
21286, 90 B 21334–21335.
No. 92 Adv. 5200.

United States Bankruptcy Court,
S.D. New York.

July 17, 1992.

---

Cleary, Gottlieb, Steen & Hamilton, New York City, for Lacos.

Proskauer Rose Goetz & Mendelsohn, New York City, for Defendant.

Wachtell, Lipton, Rosen & Katz, New York City, for Unsecured Creditors' Committee.

Weil, Gotshal & Manges, New York City, for Metropolitan Life Ins. Co.

Wilkie, Farr & Gallagher, New York City, for Equity Committee.

## DECISION ON MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT AND INJUNCTION

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The plaintiff's motion and the debtor's cross-motion for summary judgment in this adversary proceeding bring into focus several issues of corporate governance. The primary issue is whether or not the preferred shareholders' right to elect four di-rectors due to the debtor's nonpayment of dividends reduces the number of directors the common shareholders may elect from six persons to two persons, or instead, automatically expands the board from nine members to thirteen members. Additionally, a question is raised as to whether or not the debtor's class of $13.50 preferred shareholders may participate with the debtor's class of $4.50 preferred shareholders in the election of two directors in addition to the $13.50 preferred shareholders' separate right to elect two directors in the event of the nonpayment of dividends. If the class of $13.50 preferred shareholders may participate with the vote of the class of $4.50 for the election of two directors, because of their majority in number, the class of $13.50 preferred shareholders will dominate the election and will be able to elect four directors; two directors while participating with the class of $4.50 preferred shareholders and two directors while voting separately.

## FACTUAL BACKGROUND

The plaintiff, Lacos Land Company ("Lacos"), is a Nevada corporation with its principal place of business in California and is the holder of one of the largest blocks of the debtor's common stock.

The defendant debtor, Lone Star Industries, Inc., is a publicly held Delaware corporation with its principal place of business in Stamford, Connecticut. There are over 16,630,000 shares of the debtor's common stock issued and outstanding. On December 10, 1990, the debtor filed with this court a voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code and continues to operate its business and manage its properties as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

Pursuant to Article XI of the debtor's Certificate of Incorporation, its board of directors is divided into three classes, Class I, Class II, and Class III, with the directors in each class serving for a term of three years. The debtor has operated with a board of nine directors. On June 18, 1992, the board repeated its previous determina-

tions to continue the size of the board at nine directors. There are presently two directors in Class I. One Class I seat is vacant. There are three directors in each of the Classes II and III. The terms of the directors in Class I and Class II were scheduled to expire at the 1991 and 1992 annual shareholders' meetings, respectively. However, no annual meetings of shareholders were held in 1991 and 1992. The debtor's last annual meeting of shareholders was held in May of 1990.

On February 10, 1992, the Official Committee of Equity Holders of the debtor (the "Equity Committee") commenced an adversary proceeding in this court to compel the debtor to convene a shareholders' meeting. The debtor moved to dismiss the motion, which was supported by the Creditors' Committee. On April 6, 1992, this court denied the debtor's motion to dismiss the motion to compel the convening of a shareholders' meeting. On June 2, 1992, this court issued an order settling the issue with respect to the annual shareholders' meeting. The settlement order provided that, absent agreement by June 18, 1992 among the parties to the meeting and the preferred shareholders with respect to the composition of the debtor's board of directors, the debtor would be required to schedule a shareholders' meeting to be held on or before October 29, 1992 for the election of Class I and Class II directors, *subject to the rights of the preferred shareholders*, and the transaction of such other business as may properly be presented at such meeting. The settlement order also provided that if there was no agreement regarding the composition of the board of directors, *any party in interest*, on or after June 12, 1992 could file a proceeding before this court to resolve *any dispute* concerning the rights of the common and preferred shareholders to elect members of the board of directors.

Thereafter, there was no agreement among the parties with respect to the composition of the debtor's board of directors.

On June 18, 1992, after the meeting of the debtor's board of directors, it issued a press release stating that six directors would be elected to the debtor's board of directors, two by all preferred shareholders voting as a class, two by the vote of the holders of the debtor's Class of $13.50 preferred stock and the remaining two directors by the common shareholders and the Class of $4.50 preferred shareholders voting together. The shareholders' meeting was scheduled for no later than October 26, 1992.

Because the debtor missed its sixth quarterly dividend payments to the Class of $4.50 preferred shareholders, the Class of $13.50 preferred shareholders became entitled to exercise their rights to elect directors pursuant to Article IV of the debtor's Certificate of Incorporation. It is not disputed that the preferred shareholders in combination may elect four directors to the debtor's board of directors. What is disputed is the manner in which each preferred class may vote and whether their vote should expand the size of the debtor's board beyond the nine directors determined by the debtor's current board.

On June 22, 1992, plaintiff, Lacos, commenced the adversary proceeding for a declaratory judgment that the $4.50 preferred shareholders, as a result of the debtor's inability to pay quarterly dividends, are entitled to elect at the Annual Meeting two of the directors then being elected, voting together with the debtor's other series of preferred stock, the $13.50 preferred. Thus, the plaintiff's original complaint stated that the "$13.50 and $4.50 Preferred should *together* elect two of the remaining ... seats up for election." Original Complaint, ¶ 26 (emphasis added).

Thereafter, the plaintiff amended its complaint and alleged in the amended complaint that the holders of the $4.50 preferred should vote separately as a class and that the $13.50 preferred shareholders may not participate in the vote together with the $4.50 preferred shareholders, but may vote separately for two additional directors at a special meeting. The plaintiff's amended complaint also requests that the size of the debtor's board of directors be expanded to include four additional directors who are to be elected by the pre-

ferred shareholders. Therefore, instead of nine directors, there should be thirteen directors.

The debtor contends that the $4.50 preferred shareholders and the $13.50 preferred shareholders may elect four directors to the board, but that they shall be included within the nine directors determined by the board of directors and not in addition to the existing three classes of directors.

The debtor has issued and outstanding two series of preferred stock. As of December 31, 1991, the debtor had 11,375 shares outstanding of its $4.50 cumulative convertible preferred stock. Each holder has one vote per share and is entitled to vote together with the common shareholders even in the absence of a dividend default. The $4.50 preferred series was issued by the debtor approximately twelve years before the debtor issued its series of $13.50 preferred stock.

Section 4.7 of Article IV of the debtor's Certificate of Incorporation governs the right, upon debtor's dividend default on preferred stock of *any series*, of the $4.50 preferred to elect two of the directors being elected at an annual meeting. The $4.50 preferred shall vote separately as a class *with all other holders of preferred stock, regardless of series*. Subsection (4) in Section 4.7, which deals with voting rights, reads as follows:

(g)(4) If payment of six or more quarterly dividends (whether or not consecutive) payable on Preferred Stock *of any series* shall be in default, in whole or in part, the holders of shares of $4.50 Preferred Stock (in addition to any rights of holders of shares of any series of Preferred Stock to vote with the Common Stock for the election of directors) shall be entitled at annual meetings of stockholders, voting separately as a class *with all other holders of Preferred Stock, regardless of series*, to elect two of the directors then being elected, which right of election shall continue until, and only until, all dividends theretofore in default on the shares of Preferred Stock then outstanding shall have been paid in full,

and if and when the full dividend on the Preferred Stock then outstanding for the then current quarterly dividend period shall have been declared and paid in full or set apart for payment. If, while the holders of shares of Preferred Stock as a class are entitled to vote for the election of two directors, any vacancy occurs among the directors elected by the holders of shares of Preferred Stock, the remaining director so elected by the holders of shares of Preferred Stock shall be entitled to nominate for election by the Board of Directors a successor director to hold office for the unexpired term of the director whose position has become vacant. If the vacancy is not filled in accordance with such nomination or if there is then in office no director who has been elected by the holders of shares of Preferred Stock, the Corporation shall, as soon as possible, call (on at least 20 days' notice) a special meeting of the holders of shares of Preferred Stock for the purpose of filling such vacancy or vacancies in the Board of Directors. If the Corporation fails to call such a meeting within 30 days after a written request by any three or more holders of shares of Preferred Stock, then such three or more holders of shares of Preferred Stock may call (on at least 20 days' notice) a special meeting of the holders of shares of Preferred Stock for such purpose and, if the vacancy or vacancies are not therefore filled as hereinabove provided, it or they may be filled at such meeting by the holders of shares of Preferred Stock, voting separately as a class regardless of series.

(emphasis added).

Section 4.8 of Article IV of the debtor's Certificate of Incorporation governs the right of the $13.50 preferred to elect two directors to the board upon the occurrence of a "Voting Rights Event," as defined in subsection 13 of the Certificate, which includes the debtor's failure to pay in full, six or more times as specified, the quarterly dividend payment on the $13.50 preferred shares. Upon such dividend failure, the $13.50 preferred become entitled to exercise its right to elect two directors to the

debtor's board of directors at a *special meeting* of $13.50 preferred shareholders. This point is stated in subsection 11(a) of Section 4.8 as follows:

11. *Contingent Voting Rights.* (a) If at any time a Voting Right Event, one or more, shall occur, each share of $13.50 Preferred Stock shall entitle the holder thereof to one vote and the holders of the $13.50 Preferred Stock shall as a class be entitled to elect two directors of the Corporation, and the holders of other Stock then entitled to vote for the election of directors shall be entitled to elect the remaining members of the Board of Directors to the extent provided in the Corporation's Certificate of Incorporation and in other Certificates of Designation creating series of Preferred Stock. At such time as the Voting Right Event, one or more, which gave rise to the exercise of the voting rights provided in this paragraph 11 has been cured by waiver, payment or otherwise, the right of the holders of the $13.50 Preferred Stock so to vote as provided in this Section 11 shall cease, subject to renewal from time to time upon the same terms and conditions.

Pursuant to Section 4.8(11)(b), the $13.50 preferred shareholders need not wait for an Annual Meeting to elect two directors to the debtor's board of directors in the event of a dividend default as to the $13.50 preferred class. The $13.50 preferred shares are entitled to call a special meeting for this purpose as follows:

(b) At any time after the voting power to elect two members of the Board of Directors shall have become vested in the holders of $13.50 Preferred Stock as provided in this paragraph 11, the Secretary of the Corporation may, and, upon the written request of the holders of record of that number of shares of $13.50 Preferred Stock which equal, in the aggregate, at least twenty percent of the number of shares of $13.50 Preferred Stock then outstanding, addressed to him at the principal office of the Corporation, *shall call a special meeting of the holders of $13.50 Preferred Stock* to be held at the principal office of the Corporation upon not more than 15 days' notice, for

the purpose of electing two directors. If such meeting shall not be so called within five days after personal service of the request, or within ten days after mailing of the same by registered mail within the United States of America, then the holders of record of that number of shares of $13.50 Preferred Stock which equal, in the aggregate, at least ten percent of the number of shares of $13.50 Preferred Stock then outstanding may designate in writing one of their number to· call such meeting at the place above provided upon not less than ten days' notice and for that purpose shall have access to the stock books of the Corporation. The persons elected as directors by the holders of $13.50 Preferred Stock at such meeting and the persons then serving as directors together with such persons so elected shall constitute the duly elected directors of the Corporation and thereafter the persons so elected as directors at each subsequent annual meeting of the holders of the Corporation's Stock, together with such individuals, if any, as may from time to time be elected as directors by the holders of the other classes of the Corporation's Stock then entitled to vote for the election of directors, shall constitute the duly elected directors of the Corporation. Any vacancy which shall arise for any reason with respect to a director elected by the holders of the $13.50 Preferred Stock shall be filled by action of the remaining director so elected, or if there be none, by the holders of $13.50 Preferred Stock entitled to vote for the election of directors at the time that such vacancy arises at a meeting called in the manner set forth hereinabove and voting in the manner set forth hereinabove.

(emphasis added).

A Series A junior participating stock was also authorized under Section 4.9 of the debtor's Certificate of Incorporation. The debtor never issued any Series A junior participating stock, so that the only two classes of preferred stock now outstanding are the $4.50 preferred and the $13.50 preferred. However, the language as to the

voting rights of the proposed Series A junior participating stock in the event of a dividend default expressly states that the two directors that this class may elect in such event expand the board by two additional members, because "the authorized number of Directors will automatically be increased by two." 4.9(3)(C)(i). The voting rights language in Section 4.9(3)(C)(i) reads as follows:

(C)(i) If at any time dividends on any Series A Junior Participating Preferred Stock shall be in arrears in an amount equal to six quarterly dividends thereon, the holders of the Series A Junior Participating Preferred Stock, voting as a separate series from all other series of Preferred Stock and classes of capital stock, shall be entitled to elect two members of the Board of Directors in addition to any Directors elected by any other series, class or classes of securities and *the authorized number of Directors will automatically be increased by two.* Promptly thereafter, the Board of Directors of this Corporation shall, as soon as may be practicable, call a special meeting of holders of Series A Junior Participating Preferred Stock for the purpose of electing such members of the Board of Directors. Said special meeting shall in any event be held within 45 days of the occurrence of such arrearage.

(emphasis added).

Of the 375,000 shares of the debtor's $13.50 preferred stock issued and outstanding, Metropolitan Life Insurance Company ("Metropolitan"), a member of the Creditors' Committee, owns and holds either directly or indirectly 275,000 shares. Thus, Metropolitan will control any vote of the holders of the $13.50 preferred and any combined vote of the $13.50 preferred and the $4.50 preferred. Therefore, if a combined vote is authorized, Metropolitan will be entitled to elect four directors to the debtor's board of directors.

If there were nine duly elected members of the debtor's board of directors in office *and not up for election* at the time the $13.50 preferred sought to exercise its Section 4.8 voting rights, the directors elected by the $13.50 preferred at a special meeting *would be added* to the nine person board so as to create *an eleven person board.* This expansion of the board in accordance with the debtor's Certificate of Incorporation would result, notwithstanding the fact that under Article XI of the Certificate of Incorporation the debtor's board of directors has the *exclusive power* to determine its size, within the range of three to eighteen directors. This expansion would also occur even though the debtor's board unanimously resolved on February 10, 1992 to set its size formally at nine directors and again resolved on June 18, 1992 to maintain the board's size at nine directors. There were no facts put forward to raise any issue of fact or to dispute the fact that in maintaining the board size to nine directors, the board acted in good faith and in the exercise of its business judgment.

The third paragraph in Article XI of the debtor's Certificate of Incorporation makes clear that directors elected by the preferred classes are not to be divided into classes unless expressly provided by the terms of the Certificate of Incorporation applicable to such preferred shares. This provision provides in relevant part as follows:

Notwithstanding the foregoing, whenever the holders of any one or more classes or series of preferred stock issued by the Company shall have the right, voting separately by class or series, to elect directors at an annual or special meeting of stockholders, the election, term of office, filling of vacancies and other features of such directorships shall be governed by the terms of this Restated Certificate of Incorporation applicable thereto, and *such directors so elected shall not be divided into classes pursuant to this Article XI unless expressly provided by such terms.*

Certificate of Incorporation, Article XI (emphasis added). The Creditors' Committee, the Equity Committee and Metropolitan support the debtor's cross-motion for summary judgment.

## DISCUSSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, as incorporated in Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment may be granted where there is no genuine issue as to any material fact so that a moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 599, 106 S.Ct. 1348, 1362, 89 L.Ed.2d 538 (1986). The nonmoving party may oppose a summary judgment motion by making a showing that there is a genuine issue as to a material fact in support of a verdict for that party. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

In the instant case, there are no material facts in dispute. The determination of the dispute between the parties is bottomed on a construction of the debtor's Certificate of Incorporation as it bears upon the voting rights of the common and preferred shareholders. In determining the issues of law in this case, consideration must be given to the corporate law of the State of Delaware because the debtor is a Delaware corporation and its Certificate of Incorporation was issued under the aegis of the corporate law of that state. The interpretation of language in a certificate of incorporation of a Delaware corporation is viewed as a contract among shareholders, so that the general rules of contract interpretation should apply to its terms. *In re Biocoastal Corp.*, 600 A.2d 343, 350 (Del.Supr.1991); *Waggoner v. Laster*, 581 A.2d 1127, 1134 (Del.Supr.1990); *Warner Communications, Inc. v. Chris–Craft Industries, Inc.*, 583 A.2d 962, 966 (Del.Ch.), *aff'd without op.*, 567 A.2d 419 (Del. Supr.1989); *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 937 (Del.Supr.1979); *Ellingwood v. Wolf's Head Oil Refining Co., Inc.*, 38 A.2d 743, 747 (Del.Supr.1944).

In interpreting the rights accorded to preferred shareholders, the courts must apply a strict construction, without presuming in favor of the preferred shares because preferences are regarded by Delaware courts as in derogation of the common law. *Biocoastal Corp.*, 600 A.2d at 350; *Waggoner*, 581 A.2d at 1134. The Certificate of Incorporation should be construed in its entirety, and all of the language reviewed together in order to reconcile all of the Certificate's provisions so as to determine the meaning intended to be given to any portion of it. *Warner Communications*, 583 A.2d at 967; *Wood*, 401 A.2d at 937; *Ellingwood*, 38 A.2d at 747.

### Participation

Section 4.7(g)(4) specifically provides that if a dividend default occurs on preferred stock "of any series," the holder of the $4.50 preferred shares, in addition to their right to vote for directors with the common shareholders even if there is no default, shall also "be entitled *at annual meetings of stockholders,* voting separately as a class *with all other holders of Preferred Stock, regardless of series,* to elect two of the directors *then being elected....*" (emphasis added). When the $4.50 preferred were issued there was no other outstanding class of preferred shareholders. Nonetheless, the Certificate of Incorporation contemplated that the $4.50 preferred shareholders would not have an exclusive right to elect two directors in the event of a dividend default as to any series of preferred stock. Thus, if another series of preferred stock was thereafter issued, as was the case here when the $13.50 preferred shares were authorized and issued years later, and a dividend default occurred with respect to the subsequently issued preferred class, the $4.50 preferred is given voting authority for two directors along with the class of preferred shareholders who suffered the dividend default. Conversely, if a dividend default is sustained by the $4.50 preferred shareholder, but not

any other subsequently issued class or classes of preferred stock, the $4.50 preferred shareholders may vote as a class "with all other holders of Preferred Stock, regardless of series" for the election of two of the directors then being elected.

■ The plain language in Section 4.7(g)(4) expressly provides that the $4.50 preferred shareholders and all other classes of preferred shares which might thereafter be issued by the debtor and outstanding would separately vote as a class, regardless of series, for the election of two directors then being elected at an Annual Meeting. Manifestly, there is no express voting right conferred upon the $13.50 preferred shares in Section 4.7(g)(4) because this class had not been authorized or issued when Section 4.7(g)(4) was promulgated. The fact that the $13.50 preferred shares were given separate and additional voting rights at a special meeting called for that purpose when the $13.50 preferred shares were later authorized and when Section 4.8 was then adopted, does not detract from the fact that the $13.50 preferred shares may participate with the $4.50 preferred shares and any other class of subsequently authorized preferred shares in the election of two directors then being elected at an Annual meeting.

The difference in the voting rights of the $13.50 preferred shares under Section 4.7(g)(4) and those accorded to these shares under Section 4.8(11)(a) is significant. Under Section 4.7(g)(4), all of the classes of preferred shares authorized to participate in voting must wait for a scheduled Annual Meeting. In the absence of an Annual Meeting, all the classes of preferred shares will be unable to elect two directors because there will be no directors "then being elected." However, the $13.50 preferred shares were later accorded an additional right when they were authorized under Section 4.8(11)(b) to call a special meeting of their class for the election of two directors in the event of a dividend default as to the $13.50 preferred shares. This discrete voting right is separate and apart from the voting right accorded the $13.50 preferred shares, together with all other

preferred classes and the $4.50 preferred class, to participate in the election of two directors at an Annual Meeting if a dividend default occurred as to any series, as authorized under Section 4.7(g)(4).

■ The fact that Metropolitan holds 275,000 out of 375,000 outstanding shares of $13.50 preferred class does not have any bearing in construing the consequences of a dividend default within the context of Section 4.7(g)(4). Obviously, if there are only 11,375 shares of the debtor's $4.50 preferred class, and the $13.50 preferred shares may participate with the $4.50 preferred shares in electing two directors at the Annual Meeting, pursuant to Section 4.7(g)(4), Metropolitan will be able to control the election of two directors at the Annual Meeting. Additionally, at a special meeting of the class of $13.50 preferred shareholders, called pursuant to Section 4.8(11)(b), Metropolitan will be able to elect another two directors, with the result that Metropolitan will be entitled to elect four directors. This mathematical computation is no reason for interpreting Section 4.7(g)(4) in any manner inconsistent with the plain language expressed in this section.

■ Metropolitan argues that the plaintiff, Lacos, lacks standing to raise the issue as to the $13.50 preferred's participation with the $4.50 preferred in voting pursuant to Section 4.7(g)(4). This point is unpersuasive in view of this court's settlement order, dated June 2, 1992, which gave any party in interest under that order the right to submit to this court any dispute concerning the rights of the common and preferred shareholders to elect members of the board of directors. In any event, the position urged by plaintiff, Lacos, that the $13.50 preferred class may not participate with the $4.50 preferred in voting for directors pursuant to Section 4.7(g)(4) has not been sustained. Indeed, the court agrees with plaintiff's original complaint, before it was amended, that "at the Annual Meeting, two of the directors then to be elected shall be elected by the holders of the $4.50 preferred and the holders of the $13.50 Pre-

ferred, voting together as a class." Complaint, at ¶ 33(b).

### Numbers

The debtor reasons that of the six board seats up for election at the Annual Meeting, its two preferred classes may elect four directors. Plaintiff, Lacos, contends that the common shareholders may elect all six directors in Classes I and II. The three directors in Class III are not up for election this year. Plaintiff further concludes that the preferred classes may elect four additional directors, so that the nine member board of directors would be expanded to thirteen. The court disagrees with both positions.

The debtor argues that the size of its board should not be expanded automatically and must remain at nine members because the debtor's Certificate of Incorporation and its By–Laws give the board of Directors the exclusive right to determine its size and the board expressly voted to remain at nine members. Manifestly, the debtor's Certificate of Incorporation also provides that even if no directors were up for election at a time when a default occurred as to the $13.50 preferred shares, Section 4.8(11)(b) specifically authorizes the $13.50 preferred class to call a special meeting of the class, at which time they may elect two directors who would then be added to the nine member board. Moreover, in the event the debtor should in the future issue a Series A junior participating class, such class would be authorized, in the event of a dividend default as to that class, to elect two members of the board pursuant to Section 4.9(3)(c)(i) at a special meeting "in addition to any Directors elected by any other series, class or classes of securities and the authorized number of Directors will *automatically be increased by two.*" Section 4.9(3)(c)(1) (emphasis added).

■ The court must construe the debtor's Certificate of Incorporation in its entirety, and view all its language together in order to reconcile all of the provisions and determine the meaning intended. *Warner Communications*, 583 A.2d at 967; *Wood v. Coastal States Gas Corp.*, 401 A.2d at 937; *Ellingwood v. Wolf's Head Oil Refining Co., Inc.*, 38 A.2d at 747. It is apparent in viewing Section 4.8(11)(b) and Section 4.9(3)(c)(i), that both sections deal with the election of directors at a special meeting of the preferred class involved. Section 4.8(11)(b) gives the $13.50 preferred class a right to elect two directors at a special meeting, even if no directors are up for election or if no Annual Meeting is scheduled. This separate right afforded the $13.50 preferred class will cause the board to expand to eleven directors if no Annual Meeting is called or if no directors are up for election. Similarly, Section 4.9(3)(c)(i) will result in an expansion of the board by two additional directors, because the debtor's Certificate of Incorporation expressly provides that the board will "automatically be increased by two." Accordingly, the debtor's argument that its board is inflexibly set at nine members is contradicted by the express provisions to the contrary in Sections 4.8(11)(b) and 4.9(3)(c)(i).

In harmonizing Sections 4.8(11)(b) and 4.9(3)(c)(i) with Section 4.7(g)(4) as to the $4.50 preferred class, it is clear that a distinction is drawn between the voting rights of the $4.50 preferred shares which are limited to the election of two directors "then being elected" at an Annual Meeting, and the voting rights of the $13.50 preferred shares, or any future issue of Series A junior participating stock, which may each vote separately for the election of two directors at a special meeting, in the event of a dividend default as to their class.

■ In referring to the voting rights of the $4.50 preferred shares, Section 4.7(g)(4) employs words of subtraction, rather than addition and words of limitation rather than expansion in providing that, in the event of a dividend default, the $4.50 preferred, together with all other holders of preferred stock to vote only at an Annual Meeting, and not at any special meetings, "to elect two of the directors then being elected. . . ." If no directors are up for election, the $4.50 preferred may not elect any directors. If no Annual Meeting is held, they may not elect any directors.

Similarly, there must be two or more directors up for election in order for this class to elect two of the directors "then being elected." Based on the express language used in Section 4.7(g)(4) it is readily perceived that the debtor's Certificate of Incorporation does not give the $4.50 preferred class any voting right that would increase the number of existing board members at a vote held at an Annual Meeting. Hence, if six directors are up for election at an Annual Meeting, the preferred classes voting pursuant to Section 4.7(g)(4) as a result of a dividend default as to any series of preferred stock, may elect two of the six directors and the common shareholders, together with the $4.50 preferred shares, may vote together to elect the remaining four directors.

■ As previously stated, the voting rights of the $13.50 preferred class are strikingly different from those of the $4.50 preferred class. In direct contrast with the voting rights of the $4.50 preferred class, the $13.50 preferred class has a separate right, in the event of a dividend default, to call a special meeting of its class even if no directors are up for election and notwithstanding the absence of an Annual Meeting. If two additional directors are elected by the $13.50 preferred at a special meeting of their class and if the board of directors believes that the size of the board should remain at nine members, it may exercise its business judgment at the next board meeting and reduce the size of the board to any number not less than three directors, as provided for in Article XI of its Certificate of Incorporation and pursuant to Article III of its By–Laws. However, unlike the $4.50 preferred shares which are limited in voting, in the event of a dividend default, to the election of two of the directors "then being elected" at an Annual Meeting, the $13.50 preferred class is not so constrained.

■ The debtor seeks to require the preferred classes, in the event of a dividend default as to dividends paid to such classes, to elect directors only in replacement of, and not in addition to, any of the nine directors included in the three staggered classes authorized under the debtor's Certificate of Incorporation. However, the Certificate of Incorporation specifically provides for more directors than may be included in the three staggered classes of directors. Under Delaware law, these additional contingent directors will not constitute a proscribed fourth class. *Insituform of North America, Inc. v. Chandler*, 534 A.2d 257, 265 (Del.Ch.1987).

> What if a company with a staggered board containing three classes of directors had a provision in an issue of preferred stock calling for the election of certain directors by the preferred in the event of a default in payment of dividends? Such provisions were and are, of course, not uncommon.....
>
> The amendment [Section 14(d) of the Delaware General Corporation Law] makes clear that directors elected pursuant to a special provision in the charter by the holders of a class or series of stock, will not constitute a proscribed fourth class whether or not their terms coincide with that of an existing class.

*Id.* at 265.

The logical conclusion to be derived from the language contained in Section 4.8(a) and (b) is that the $13.50 preferred class, under certain circumstances, may elect two additional directors, and the holders of other stock shall be entitled to elect "the remaining members of the Board of Directors," up to nine members authorized for the three staggered classes, or up to eleven directors if a future issued Series A junior participating stock is entitled to elect an additional two members pursuant to Section 4.9(3)(c)(i).

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). In accordance with 28 U.S.C. § 157(c)(2), all the parties to this proceeding have consented that this court hear and determine and enter appropriate orders and judgments in this proceeding, subject to review under 28 U.S.C. § 158.

2. Pursuant to Section 4.7(g)(4) of the debtor's Certificate of Incorporation, upon the default of six or more quarterly dividends payable on the preferred stock of any series (such default has occurred in this case) the holders of both classes of the debtor's preferred shares, consisting of the $4.50 and the $13.50 preferred classes, may participate together, but, voting as separate classes, to elect two of the six directors now up for election at the debtor's next scheduled Annual Meeting of shareholders.

3. The other four directors up for election at the next scheduled Annual Meeting may be elected by the vote of the common shareholders together with $4.50 preferred shareholders who may vote even in the absence of a dividend default.

4. Due to the dividend default as to the class of $13.50 preferred shareholders, such class may call a special meeting of the shareholders in this class, pursuant to Section 4.8(11)(b) of the debtor's Certificate of Incorporation. At such special meeting of $13.50 preferred shareholders, this class shall be entitled separately to elect two directors to the debtor's board of directors in addition to the six directors that are up for election at the next scheduled Annual Meeting of shareholders. The holders of the debtor's common shares and the $13.50 preferred shareholders, who may vote even in the absence of a dividend default, shall be entitled to elect the remaining six members of the board of directors at the next scheduled Annual Meeting of shareholders.

5. Plaintiff, Laco's, motion for summary judgment declaring that the debtor's common shareholders have a right to vote on all of the six Class I and Class II directors to be elected at the next scheduled Annual meeting of shareholders is denied. The common shareholders have a right to vote for four of the directors to be elected at the Annual Meeting, whereas because of the dividend defaults as to the $4.50 and $13.50 preferred classes, such shareholders have a right, voting as separate classes, to participate together in the election of two of the six directors to be elected at the next scheduled Annual Meeting.

6. The debtor's cross-motion for summary judgment dismissing plaintiff Lacos' Second Amended Complaint is denied because the $13.50 preferred shareholders are entitled separately to elect at a special meeting of such class two directors to the debtor's board of directors in addition to the six directors that are up for election at the next scheduled Annual Meeting of shareholders.

7. The debtor's position that the two classes of preferred shareholders are entitled to elect four of the debtor's nine member board of directors and that the preferred shareholders may not expand the size of the board of directors beyond the nine seats previously determined by the board, is not supported by the plain language in Section 4.8(11)(a) and (b) of the Certificate of Incorporation.

SETTLE ORDER on notice in accordance with the foregoing.